# CHARLESTON.

SMITH V. SMITH.

Submitted February 13, 1918.   Decided February 26, 1918.

1. CONTEMPT—*Writ of Error—Statute.*

   Section 4, of ch. 160. of the Code, impliedly withholding or de-
   ·nying a writ of error to a judgment for contempt consisting of
   non-performance of, or disobedience · to, a judgment, decree or
   order, is limited in its operation to judgments, decrees and orders
   rendered, pronounced and entered by courts having jurisdiction to
   render, pronounce and enter them, and to such valid judgments,
   decrees and orders as the court has jurisdiction and power to en-
   force by process of contempt.   (p. 762).

2. EQUITY—*Remedies—Jurisdiction.*

   Statutory abrogation of a remedy afforded by general equity
   jurisprudence, denies to courts of equity, power and jurisdiction to
   adopt and use it.   (p. 764).

3. SAME—*Decree for Payment of Money—Statute.*

   Sections 1 and 2, of ch. 139 of the Code, deny to courts of equity
   jurisdiction and power, previously accorded them by general equity
   procedure, to enforce decrees for the payment of money, by process
   of contempt.   (p. 765).

4. DIVORCE—*Alimony—Lien—Contempt.*

   Though a decree for alimony constitutes a lien on the real estate
   of the party against whom it is pronounced and may be enforced
   · by execution, it is a decree 'not merely for the payment of money,
   but for the payment of money in discharge · of the high marital
   duty of maintenance, wherefore it may be enforced by attachment
   for contempt also.   (p. 765).

5. SAME—*Alimony—Contempt—Error.*

   A writ of error does not lie to a judgment of contempt for dis-
   obedience of a decree requiring payment of alimony.   (p. 765).

6. CONTEMPT—*Refusal to Perform Order or Decree—Equity Juris-
   diction.*

   A court of chancery may, by proper procedure,. commit a dis-
   obedient or recalcitrant litigant for refusal to perform an affirm-
   ative act lawfully required of him by its decree,. for the benefit
   of the opposite party to the suit, by an order entered upon its own
   records, under the style of the cause in which such decree was pro-
   nounced, as a means of coercing performance of the act so re-
   quired.   In so far as the decisions in *State* v. *Fredlock,* 52 W. Va.

232, *State* v. *Cunningham*, 33 W. Va. 607, *State* v. *Irwin*, 30 W. Va. 404, *State* v. *Frew and Hart*, 24 W. Va. 416 and *State* v. *Bridge Company*, 16 W. Va. 864, deny such jurisdiction and power to courts of chancery, they are disapproved and overruled. (p. 768).

7.   SAME—*Nature of Proceeding—Committal.*
    In such cases, the committal is not deemed in law to be punishment for any criminal offense. The contempt for which it is inflicted is civil in its nature and only incidentally involves an offense to the court or the public. (p. 770).

Error to Circuit Court, Roane County.

Action by Laura M. Smith against B. C. Smith. From a judgment of committal for contempt of court by reason of the nonpayment of installments of alimony, defendant brings error.

*Writ of error dismissed.*

*Charles E. Hogg,* and *Charles J. Hogg,* for plaintiff in error.

*H. C. Ferguson,* for defendant in error.

POFFFENBARGER, PRESIDENT:.

A judgment of committal for a contempt of court, effected by non-payment of installments of alimony, decreed against the plaintiff in error, constitutes the subject matter of this writ of error; and one very vital question arises on the motion to dismiss the writ as having been improvidently awarded.

A judgment for contempt of a trial court, consisting of disobedience of its judgment, decree or order, is not reviewable in the appellate court, if the trial court had jurisdiction of the cause in which it rendered, pronounced or entered the violated judgment, decree or order, and did not exceed its jurisdiction in doing so. *State ex rel.* v. *Baltimore & Ohio Ry. Co.,* 73 W. Va. 1; Code, ch. 160, sec. 4.

Full acquiescence in the foregoing proposition is evidenced by the brief filed for the plaintiff in error; but it is earnestly insisted that the contempt procedure complained of was action in excess of the jurisdiction of the court, because, it is said, sec. 1, of ch. 139, of the Code, has stripped courts of

equity of their power to enforce decrees for alimony by such procedure. That section places a decree for land or personal property or for the payment of money on the same footing as a judgment for such property or money, and then proceeds as follows: "But a party may proceed to carry into execution, a decree or order in chancery, other than for the payment of money, as he might have done, if this and the following section had not been enacted." The next section makes the beneficiaries of decrees requiring the payment of money, judgment creditors, and authorizes issuance of executions thereon.

If the construction contended·for should be conceded, it may not follow that a writ of error lies to a judgment in a contempt proceeding; for the statute expressly withholds a writ of error to a judgment for a contempt effected by disobedience of a judgment, decree or order. It reads: "To the judgment of a circuit court for a contempt of court, other than for the non-performance of, or disobedience to, a judgment, decree or order, a writ of error shall lie from the supreme court of appeals." Code, ch. 160, sec. 4. *State ex rel.* v. *Baltimore & Ohio Ry. Co.*, 73 W. Va. 1, recognizes an implied exception to this statute founded upon lack of jurisdiction in the circuit court, but the lack of jurisdiction, constituting the ground of the exception, as defined in that case, pertains to the judgment or decree for enforcement of which the contempt proceeding is invoked. That decision necessarily denies to the statute in question a part of the force and effect literally imported by its terms. If an exception thereto can be validly founded upon lack of jurisdiction to pronounce the decree for enforcement of which contempt procedure is resorted to, it is difficult to see any reason why lack of jurisdiction in the process of enforcement would not constitute a sufficient basis for another or further exception. In the latter case, the lack of jurisdiction would be more clearly and directly involved, than in the former. In neither, is there any foundation for it in the terms of the statute. At the same time, it must be remembered that a judgment or decree rendered without jurisdiction, is a nullity, wherefore it may be said there is no judgment or decree, in such case, to be en-

forced. On the other hand, when the judgment or decree is not questioned and its binding force is beyond doubt, there is an order of the court which the party proceeded against is bound to respect and obey. Nevertheless, if there is no jurisdiction or power to enforce obedience, by the means adopted, the party proceeded against is under no duty to obey in the particular manner in which the contempt proceeding endeavors to make him perform. Obviously, therefore, there is lack of power or jurisdiction of the court in either case; and, if proper construction results in an implied exception to the operation of the statute in the one instance, it must necessarily do so in the other. Properly read, therefore, the statute withholds a writ of error to a judgment for contempt consisting of non-performance of, or disobedience to a judgment, decree or order, if the court rendering it had jurisdiction to pronounce it and has jurisdiction and power to enforce it by contempt procedure. All judgments, decrees and orders are not enforceable in that way.

Every act of a court founded upon an erroneous interpretation of a statute or a misconception of the common law and variant therefrom, is not void for want of jurisdiction. It is familiar law that a court has as much power to decide erroneously as it has to decide correctly. Mere errors in decisions upon questions of law are not acts in excess of jurisdiction. In some instances, however, they are. In the determination of the meaning of laws pertaining to their own power and jurisdiction, courts decide and act at their peril. On the other hand, in administering law applicable to the rights of the litigating parties, their acts founded upon erroneous interpretations of laws are, ordinarily, mere errors of judgment. These propositions are so self-evident and so thoroughly attested by the decisions of this and other courts, that authority for them need not be cited.

Courts derive their authority and powers from the constitution and laws of the state and, unless the power or authority of a court to perform a contemplated act, is found therein, the act, if done, is *coram non judice.* 7 R. C. L., p. 1030; *N. & W. Ry. Co.* v. *Pinnacle Coal Co.*, 44 W. Va. 574. In the absence of a statutory modification or abrogation,

courts of general jurisdiction have all the powers conferred upon them by the common law, but such remedies and powers as the constitution or statutes have abrogated, they do not possess. Obviously, therefore, any effort on the part of a court to employ an abrogated remedy, formerly permitted to it by the common law or general equity jurisprudence, would be an act in excess of its jurisdiction.

The statute invoked in resistance of the contempt procedure manifestly deals with remedies as well as rights and impliedly forbids enforcement of a decree or order in chancery for the payment of money, otherwise than by execution. It makes the decree the equal of a judgment and declares it shall be embraced by the word "judgment" whenever it is used in certain chapters. It also makes the person entitled to any decree or order requiring the payment of money, a judgment creditor, even though the money may be required to be paid into a court, or a bank, or other place of deposit. In all such cases, it authorizes an execution on the decree or order. Furthermore, the decree becomes a lien upon the real estate of the party against whom it is pronounced. Having done all this, it then declares that the party in whose favor it is may proceed to carry into execution, a decree or order in chancery, other than for the payment of money, as he might have done before the passage of the act. This necessarily implies that he cannot so enforce a decree for the payment of money. Manifestly, therefore, power to enforce such a decree by process of contempt has been abrogated and no longer exists. When such remedy is available, it is the court's remedy or process. Denial thereof to a party necessarily carries denial of power in the court to award it. Jurisdiction formerly existing is, to that extent, abrogated or withdrawn by the statute.

An overwhelming weight of authority, however, makes a decree for alimony more than a mere decree for the payment of money. "It has frequently been insisted that a decree for alimony is in fact a debt, and therefore payment should not be enforced by an attachment for contempt where the constitution prohibits imprisonment for debt. But it is uniformly held, and such is the true doctrine, that the decree for alimony

is an order of the court to the husband compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the officers or to an attorney. The imprisonment is not alone to enforce the paymenet of money but to punish the disobedience of the party; and the order is not, therefore, a debt, within the meaning of the constitution." Nelson, Div. & Sep., sec. 939. "Objection has been raised to the enforcement of a judgment, order or decree for alimony by contempt proceedings, on the ground that alimony is a debt within the meaning of statutes and constitutions which prohibit imprisonment for debt. By the great weight of authority, however, alimony is not considered a debt within such meaning." 3 Ency. L. & P. 181; "It is sometimes held that where the statute provides for execution and other processes for the collection of alimony, that imprisonment for contempt cannot be resorted to as an additional remedy. But the correct interpretation is that the statute conferring additional remedies did not deprive the courts of their inherent power to enforce such order." Nelson, Div. & Sep., sec. 939. These quotations from text books are sustained by abundant authority. In some of the states having statutes similar to ours, enforcement by attachment for contempt is limited to cases in which the decree cannot be otherwise enforced. In Illinois, it is not permitted if payment is secured. *Andrews* v. *Andrews,* 69 Ill. 609. In New York, the moving party is required to show, not only that the husband has refused to comply with the order, but also that the payment cannot be enforced by execution or sequestration, or a resort to the securities. *Sanford* v. *Sanford,* 44 Hun. 363; *Isaacs* v. *Isaacs,* 61 Hun. Pr. 369; *Whitney* v. *Whitney,* 11 N. Y. Supp. 583; *Mahon* v. *Mahon,* 18 J. & S. (N. Y.) 92. In Iowa, Michigan and Nebraska, the courts seem to hold that, under no circumstances, can a decree for alimony be enforced by process of contempt. *Bailey* v. *Bailey,* 69 Ia. 77; *Segear* v. *Segear,* 23 Neb. 310; *Carnahan* v. *Carnahan,* (Mich.) 107 N. W. 73.

Under our statutes, a decree for ailmony is more than a

mere decree for money. Upon decreeing the dissolution of a
marriage or a divorce of either class, the court may make
such further decree as it shall deem expedient, concerning the
estate and maintenance of the parties, or either of them,
Code, ch. 64, sec. 11. The relation assumed or recognized by
this statute, as constituting the basis of the right to be vin-
dicated by the decree, is not that of debtor and creditor. It
is a duty of maintenance imposed by the marital relation,
from which the divorce does not necessarily exonerate the
parties. The statute empowers the court decreeing the di-
vorce, to enforce performance of the duty of maintenance,
after the separation or severance of the marriage relation.
Authority is conferred upon the court, not merely to decree
money as alimony, but to make any decree it may deem ex-
pedient, concerning maintenance. Enforcement of the lien
of the decree may involve ruinous delay and execution may
be unavailing, and yet the delinquent party may have it in
his power easily to raise and pay the money. Power to make
such decree as the court deems expedient concerning main-
tenance, obviously goes beyond the mere award of money as
a debt and reaches the case supposed. The decree is for main-
tenance, not mere money. The money decree is a means to an
end, the real purpose of the decree, maintenance. Its pecuni-
ary quality makes it a lien and the basis of an execution, as
this court has held, but these characteristics do not necessarily
imply absence of others. It may consistently be a decree for
money and, in addition thereto, a decree for support, not
fully effectuated by execution and enforcement of the lien on
real estate.

In view of this conclusion warranted by the weight of judi-
cial opinion and the liberal terms of the divorce statute, there
is no lack of jurisdiction, and, hence, no right of review by
writ of error. If the decree goes beyond the ability of the
plaintiff in error, in its requirements, an application to the
court for relief by a modification of its terms and provisions,
would have forestalled and prevented the procedure for con-
tempt. Error in the court's action upon that application
could have been corrected on an appeal. When the court has
jurisdiction in all respects, the party subject to a decree en-

forceable by attachment for contempt, must obey the decree or get rid of it. The statute gives him no right to withhold performance by disobedience and a writ of error to the judgment for contempt. The former is a contempt of the court and the statute denies him the latter. *State ex rel.* v. *Baltimore & Ohio Ry. Co.,* cited.

A careful reading of the opinion in *Cariens* v. *Cariens,* 50 W. Va. 113, fails to disclose an assertion of lack of power in the trial court to modify a decree for alimony, entered contemporaneously with a decree of divorce, upon facts subsequently arising. Such a decree is declared to be conclusive upon the parties, as to all facts existing at its date, but power in the court to discharge the husband from payment, for good cause subsequently accruing, is affirmed in unequivocal terms. As to the power of the court, respecting alimony, the statute deals with both classes of divorce, in exactly the same terms, wherefore the legislature cannot be deemed to have intended to withhold or deny right to modify the decree in one class any more than in the other. Moreover, in *Henrie* v. *Henrie,* 71 W. Va. 131, a majority of this court expressed the opinion that the statute does not deny such power.

Entry of the order complained of in the chancery order book and under the style of the divorce suit is relied upon as a fatal and jurisdictional departure in the proceeding. Our decisions uniformly say every contempt proceeding is criminal in its nature and, after issuance of the rule, should be conducted in the name of the state and recorded in the law order book. *State* v. *Fredlock,* 52 W. Va. 232; *State* v. *Cunningham,* 33 W. Va. 607; *State* v. *Irwin,* 30 W. Va. 404; *Ruhl* v. *Ruhl,* 24 W. Va. 279; *Craig* v. *McCulloch,* 20 W. Va. 148; *State* v. *Harper's Ferry Bridge Co.,* 16 W. Va. 864. In each of these cases except *Ruhl* v. *Ruhl,* the alleged contempt consisted of the doing of a forbidden act and the object of the proceeding was punishment. The contempts were primarily criminal, rather than civil, in their natures, and the purpose of the procedure was not mere enforcement of performance of an affirmative act or duty required by a decree. When the disobedience consists of failure to perform a decree in favor of the opposite party, the contempt is civil in its main fea-

tures, though there is an incidental element of criminality in
it. In *Ruhl* v. *Ruhl,* the defendant was proceeded against for
failure to obey a decree for payment of money, but the de-
cree was void for lack of jurisdiction in the court in which
it was entered. The judgment of contempt was entered in the
chancery order book, under the style of the main cause, and
this court declared the contempt proceeding erroneous, not
void, for that reason, but void and without foundation in
law, because the decree violated was void. Point 3 of the
syllabus in *State* v. *Irwin,* 30 W. Va. 404, seems to say a pro-
ceeding so entered is void for want of jurisdiction in the
chancery court, and the opinion, at page 420, declares it ir-
regular and says the law side of the court only has jurisdic-
tion. The alleged contempt in that case was primarily crim-
inal and the proceeding contemplated punishment only. In
that decision, the court, going far beyond the case presented
by the record, asserted that all contempt proceedings must be
conducted on the law side of the court, notwithstanding their
differences in character and purpose. Under practically all
of the earlier decisions here referred to, lies the fallacious as-
sumption of a right of review for errors in the sentence or
order, in all cases of contempt. From the lack of provision
for review otherwise than by writ of error, the court inferred
legislative intent to make all contempts criminal, to the end
that they may be so reviewed. This process of interpretation
completely overlooked plainly expressed legislative purpose
not to allow review at all, for mere error, in certain classes of
cases, namely, non-performance of, or disobedience to, a
judgment, decree or order. Barnes' Code, 1918, ch. 160,
sec. 4. But for the statute, there would be no right of appeal
in any contempt case. There was none at common law. 6
R. C. L. p. 538; *Wells* v. *Comm.,* 21 Gratt. 500. In these
cases, the statute does not give it: Plainly, therefore, it does
not exist. It exists in other cases, because the statute gives it.
This oversight and erroneous assumption induced the adoption
of a highly confused, illogical and unnecessarily cumbersome
procedure. As the construction has no foundation in law, fact
or reason, it must be rejected and, in consequence of its re-
jection, the practice formerly existing and recognizing the dif-

ference between civil and criminal contempts is reinstated. Under it, a court of equity could, by an order entered in its own records, under the style of the pending cause, commit a recalcitrant party, to coerce him into the performance of a duty required of him by its decree, in favor of the opposite party. *Purcell* v. *Purcell,* 4 H. & M. 507. Such an order is almost devoid of the element of criminality and almost wholly remedial. Without power and authority to make it, a court of equity would be unable in many instances, to effectuate legal right and justice between the parties. To make such a proceeding purely criminal in legal contemplation and limit the jurisdiction to the law courts necessarily strips the courts of equity of power essential to the due and efficient exercise of their jurisdiction. An interpretation of a statute occasioning such results and resting upon a mere unnecessary implication, hardly more than a conjecture, is obviously unsound and indefensible. In so far as the decisions herein referred to deny to courts of equity, jurisdiction over purely civil contempts, they are disapproved and overruled, for the reasons here stated. And it follows from this conclusion, that the decree complained of is neither void nor erroneous on account of the cognizance of the proceeding by the chancery court, its prosecution therein and the entry of the decree in its records, under the style of the divorce suit. It may be added, that this procedure was impliedly recognized as valid in two cases recently decided by this court. *Petrie* v. *Buffington, Sheriff,* 79 W. Va. 113, 90 S. E. 557 and *Ex parte Beavers,* 80 W. Va. 34, 91 S. E. 1076.

The suggestion in argument that the imprisonment involved in the court's process of enforcement of obedience to its decree necessarily makes the proceeding criminal and confers right of trial by jury, wherefore it is one for the cognizance of a court of law only, is altogether untenable. Instancing the case of a refusal to pay alimony and imprisonment to coerce such payment, the Supreme Court of the United States, in *Gompers* v. *Buck Stove and Range Co.,* 221 U. S. 418, 34, L. R. A. N. S. 874, speaking through Mr. Justice Lamar, said: "Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defen-

dant to do what he has refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.''·

It is unnecessary and would be improper here, to attempt to indicate the class of cases in which the procedure should be on the law side of the court, or to say whether procedure in the wrong forum would be fatal to the judgment of contempt or committal for a civil contempt. Such a departure might be a mere error as to which there is no right to relief. *McGrew* v. *Maxwell,* decided at this term.

For the reasons stated, the writ of error will be dismissed as having been improvidently awarded.

*Writ of error dismissed.*