[No. 3382.   May 7, 1929.]

Ex parte SEDILLO.

[278 Pac. 202.]

Original habeas corpus by Filimon Sedillo to test the legality of petitioner's restraint by the sheriff of Socorro county.   Petitioner discharged.

William J. Eaton, of Socorro, and Roberts & Brice, of Santa Fe, for petitioner.

Charles H. Fowler, of Socorro, for respondent.

OPINION OF THE COURT

WATSON, J.   Upon the petition of Filimon Sedillo a writ of habeas corpus issued out of this court to test the

legality of petitioner's restraint by the sheriff of Socorro county, under an order of the district court committing him for contempt for failure to comply with the terms of a decree of the court requiring him to pay $50 monthly for the support of his children.

The record before us consists of: (1) The complaint in a cause in Socorro county wherein petitioner's wife was plaintiff, and wherein she charged that petitioner had abandoned her and her two children on March 5, 1927, about three months prior to the filing of the complaint, since which time she and the petitioner had lived separate and apart, and had not cohabited as husband and wife, and since which time petitioner had wholly failed to support the wife and children, failed to allege that petitioner had any property or means, alleged that he was able-bodied, employed at $20 per week, and had small expenses, and prayed that she be awarded the care, custody, and control of the children, and that petitioner be required to furnish adequate support for said children; (2) petitioner's answer denying the allegations of the complaint, and his cross-complaint charging the wife with abandonment on said March 5, 1927, and praying for a divorce and the custody of the children; (3) an answer to the cross-complaint wherein it is charged that, while the plaintiff did, on March 5, 1927, leave the maritial residence for that of her parents, she was justified in doing so because of petitioner's failure to support her and the children; (4) the final decree, finding that the allegations of the complaint had been substantially proven and that the plaintiff was justified in leaving the marital abode, dismissing the cross-complaint, and awarding to plaintiff $200 suit money, the custody of the children and $50 per month for their support; (5) the petition of the plaintiff praying citation to petitioner for contempt, supported by plaintiff's affidavit that $600 had accrued under said decree and that no part thereof had been paid, that petitioner had wholly failed, neglected, and refused to make any of said payments, and had not offered or attempted to comply with the decree, that ever since the entry of the decree he had been well able to meet the payments as they became due, that he had been employed and receiving

good wages, and that he was then so employed, and that he had "wantonly and flagrantly failed to obey said orders of the court and has (had) brazenly flouted the same"; (6) petitioner's answer to the order to show cause, admitting that he had made no payments, but attempting to deny that he had been able to make such payments, alleging that in the quest of work, to enable him to earn better wages, and to comply with the decree, he had borrowed money from his father and gone to Los Angeles, where, after a short time, he had fallen sick and been compelled to call upon his father for money to enable him to return home, failing to set forth what sums, if any, he had earned during the period in question, and denying, generally, that he had been employed and receiving good wages, or that he was then so employed; (7) an order reciting that the court had examined the petition and the answer to the order to show cause, and had heard the evidence adduced, finding "that the defendant, Filimon Sedillo, has made no payments under said decree or as therein commanded, that he is in contempt of court for his failure to obey said decree, and that his contempt herein is wanton"; and ordering "that the defendant, Filimon Sedillo, be committed to the county jail of Socorro County, New Mexico, until he purges himself of said contempt by complying with said decree, or until the further order of the court. The filing with the clerk of a good and sufficient bond for the use of plaintiff, in the penal sum of $1,000.00 with sureties to be approved by the clerk, conditioned that defendant will pay the plaintiff the sums due under said decree within thirty days from the date of such bond and that he will promptly pay the six monthly payments next becoming due under said decree and as they become due respectively, shall also be deemed a purging of said contempt."

The foregoing documents are set up as exhibits to the petition herein. They are also referred to in the sheriff's return to the writ. The return further shows that on the citation and the return full hearing was had and evidence adduced by the parties.

Petitioner's principal contentions are (1) that the original decree is void for lack of jurisdiction; (2) that it is

not such a decree as may be enforced by attachment as for contempt; (3) that the order of commitment is itself void. These contentions will be considered in order.

The original decree is said to have been void, for the reason that a permanent separation of the spouses is a jurisdictional requisite in a suit under Code 1915, § 2774, which provides:

"Whenever the husband and wife shall have permanently separated and no longer live or cohabit together, as husband and wife, either may institute suit in the district court for * * * the disposition of the children, without asking for or obtaining in said suit a dissolution of the bonds of matrimony, * * *"

and that the complaint fails to allege any such permanent separation, and that such failure is not cured by the allegation of any other pleading or by any finding.

The proposition that a permanent separation is an essential fact is not questioned. We cannot doubt, however, that the separation in this case was deemed permanent both by the parties and by the court. Petitioner claimed that it was an unjustified act of abandonment and demanded a divorce because of it. The wife claimed that her departure and remaining away from the marital abode was rendered necessary by petitioner's failure to support herself and the children, and relied upon it as an abandonment by petitioner. It may well be that, if we were testing the present complaint on demurrer, as in the cases petitioner cites, we might find it insufficient. But in this collateral proceeding we must consider the issue of permanent separation to have been litigated and decided.

Petitioner advances the idea that a separation, to support an action for custody of children, must be mutually acquiesced in. "Otherwise," he says, "a wife could leave her husband today and tomorrow could seek separate maintenance and division of property." But, if the rule were as petitioner suggests, a husband, by refusing to acquiesce, could forever block any attempt of the wife for separate maintenance, division of property, or custody of children. At first impression it would seem that it is not a matter of mutual acquiescence, but that the cause of action should consist in a showing that the complain-

ing party is found justifiably living apart from the spouse, with no intention or prospect of resuming the marital relation. Petitioner has not pressed the matter sufficiently, however, to put us to a decision. In the present case, while there was apparently no mutual acquiescence in the act of separation, there is mutual acquiescence in the fact.

Petitioner's first contention will therefore be overruled.

■ As petitioner reads Code 1915, § 2778, express power is given to enforce, by attachment, an interlocutory order "for the control of the children." But no such power is given to enforce a final order for their "guardianship, care, custody, maintenance or education." He argues that section 2774 creates a special statutory proceeding; and that that section and its context is the sole source of the court's power. We do not think so.

Section 2774 creates a civil action; a suit to "be commenced and prosecuted in all things according to the provisions of chapter LXXXVIII"; that chapter being the Code of Civil Procedure. Code 1915, § 2773. The ecclesiastical law of England is no part of the common law of New Mexico, and the jurisdiction over matters of this kind is statutory. Hodges v. Hodges, 22 N. M. 192, 159 P. 1007. Therefore, in giving a civil action for disposition of children, the Legislature has enlarged the equitable powers of the district courts.

"Generally in all matters in which there is any conflict of variance between the rules of equity and the rules of the common law, with reference to the same matter, the rules of equity shall prevail."

Code 1915, § 4259.

But, even so, petitioner contends, money decrees rendered by the courts of this state in equitable causes cannot be enforced by attachments as for contempt.

Originally equity acted only in personam. Catron v. Gallup Fire Brick Co., 34 N. M. 45, 277 P. 32. Various statutes have enabled courts of equity to enforce their decrees as judgments at law are enforced—by execution, by directly passing title, etc. But it does not follow that such new powers have destroyed the power by attachment

of the person. Certain statutes have been held to destroy such power, and certain others have been held not to have done so. The question is whether legislation in New Mexico, expressly or by necessary implication, has destroyed the power of the court of equity to compel a defendant, by attachment of his person, to comply with an order for monthly payments of money.

Petitioner relies upon Code 1915, § 2190, which provides:

"The party in whose favor any judgment, order or decree in any court may be returned, shall have execution therefor in conformity to the order, judgment, or decree."

This section has been held to authorize execution for the recovery of money under orders and decrees in equity. Crowell v. Knopp, 26 N. M. 146, 189 P. 652. The language of this provision is not exclusive, and does not necessarily imply an intent to abolish any existing means of enforcing a decree in equity. It would seem designed rather to enlarge than to diminish the powers of the court.

Moreover, section 2789 provides:

"In case a sum of money is allowed the children, the same shall be a lien on all of the property of the party or parties by whom or out of whose property the same is to be paid, and the sums so allowed shall be collected by such process or procedure as by the court may be directed."

This clearly gives the court power to use whatever means it possesses to enforce its order. The language just quoted does not exactly describe an order requiring monthly payments. Whether such an order constitutes a lien on the property or may be collected by execution we are not called upon here to decide. In any event, it affords but a lame remedy, and indicates a legislative intent to enlarge, rather than to impair, the powers of a court of equity in enforcing parental duty.

Prof. Pomeroy says that statutes thus enlarging the powers of courts of equity "do not generally interfere with the original power of courts of equity to enforce obedience to their decrees by the parties themselves, and to punish parties for their disobedience by attachment, fine, imprisonment, or sequestration." Equity Jur. (4th

Ed.) §§ 1317, 1318, 1435. He cites Clements v. Tillman, 79 Ga. 451, 5 S. E. 194, 11 Am. St. Rep. 441, as holding that a decree for the payment of money cannot be enforced by attachment of the person. It will be observed that the statutes of that state are much stronger in implication of legislative intent to abolish that mode of enforcing the payment of money. The Supreme Court of Appeals of West Virginia, in a well-reasoned decision (Smith v. Smith, 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149), holds that the statute of that state "impliedly forbids enforcement of a decree or order in chancery for the payment of money, otherwise than by execution." But it holds that such a statute and its implication do not extend to an order of the court decreeing monthly payments of alimony. The opinion points out the distinction between such a decree and an ordinary money decree and how the former may not be fully effectuated by execution and enforcement of a lien, and points to a provision of its statute conferring on the court authority "not merely to decree money as alimony, but to make any decree it may deem expedient, concerning maintenance." That provision is not essentially different from ours that the court may make such order for the maintenance and education of the children as may seem just and proper, and, if it be in money, it may be collected by such process or procedure as the court may direct. The cases collected in the L. R. A. annotation to that decision seem to support, in general, the principles there announced. We concur in the views of the West Virginia Supreme Court of Appeals, and hold that the order in the present case was enforceable by attachment.

The principal attack upon the order of commitment is based upon its failure to find that the petitioner, when committed, was possessed of the ability to make the required payments. The contention is that, lacking such ability an imprisonment to terminate only upon making the payments would amount to a life sentence, and would be wholly void; that inability to comply with the terms of a decree is a complete defense to a charge of contempt; that ability to meet the payments decreed in this case depends upon property or means possessed by the petitioner

or upon his ability to work and earn; that, while a past failure or refusal to work, or to apply his earnings to the support of the children, might constitute criminal contempt, punishable as such by a definite term of imprisonment, an imprisonment, the object of which is to enforce compliance with the decree, and which is to terminate only on compliance, cannot stand, if it be impossible to comply; that, if the petitioner's contempt consisted in a present refusal to work, it would be purged by an expressed willingness to do so. These contentions strike us as correct in reason, and they are supported by authority. As they are not questioned by respondent, we adopt them for the purposes of this case.

The only contention between counsel is whether we here have a case of present ability to pay, and as to how that question is to be determined. Petitioner thinks it should be determined from the order of commitment, and cites numerous decisions holding that such an order must contain findings supporting the sentence. Most of the cases cited are distinguishable as controlled by particular statutes, or in that the sentence was being reviewed directly instead of collaterally. To an extent, at least, chapter 51 of the Code of 1915 purports to cover habeas corpus, the right and the procedure. Section 2603 directs discharge, if "no legal cause" be "shown for such imprisonment or restraint, or for the continuation thereof." Section 2604 directs remand, if the restraint appear to be "for any contempt, specially and plainly charged in the commitment." It might be worth considering whether, conversely, if no contempt be "specially and plainly charged in the commitment," these sections do not require us to discharge the petitioner. However, that point is not made here, and we shall not decide it.

Counsel for respondent does not seriously contend but that the order of commitment, standing alone, is ambiguous. But he urges that it must be interpreted in the light of the record; and that in that light the finding that the contempt was wanton amounts to a finding of present ability to pay. He argues that the original decree is conclusive of the ability to pay; that presumptively the situation has not changed; that both parties produced all the

testimony available, upon consideration of which the court adjudged the contempt and its wantonness, and made the order in question; that the court would not conceivably have passed the sentence he did, in the absence of proof of present ability to pay.

In view of the conclusion we here reach, we adopt counsels' suggestion that we determine from the record before us whether we here have a case of present ability to pay. Unfortunately we find nothing in the record to aid the order. On the contrary, we find it highly persuasive, if not conclusive, that the petitioner has been committed to serve until he shall pay a considerable sum of money—not because he can pay and contumaciously refuses, but because he could have paid from month to month, but contumaciously refused. Nowhere in the pleadings is there any reference to property or means of the petitioner which he could apply to the support of his children. The sole reliance in the complaint, and in the affidavit supporting the application for attachment, is upon petitioner's earning power. It is almost incredible that, if petitioner had had property or means, the wife would not have so alleged in her complaint, and particularly in her showing on the application for attachment, or that the court would not have so found. The word "wanton," upon which respondent relies, was borrowed from the affidavit. The evidence which is not before us presumably related to the issues of fact before the court, made by the affidavit and the answer to the order to show cause. No issue was made of the then possession of means to pay the arrears. We must therefore interpret the finding as implying merely either that the petitioner has failed reasonably to exert himself or has applied his earnings otherwise than to compliance with the decree. Such a finding does not justify the present order of commitment.

Some other objections have been made by petitioner, but, as the questions are not likely again to arise in any further proceeding in this case, they need not be considered. Finding petitioner's restraint under the present order illegal, we find it necessary to discharge him, and it is so ordered.

BICKLEY, C. J., and PARKER, J., concur.