JOHN B. HALLAM *v.* ALPHA COAL CORPORATION

(No. 9033)

Submitted May 7, 1940.   Decided June 22, 1940.

*L. T. Eddy* and *M. Earl Morgan,* for plaintiffs in error.
*Showalter & Boggess,* for A. L. Minard and sixty-eight other labor employees of Alpha Coal Co.

KENNA, JUDGE:

This is a summary proceeding for contempt ancillary to a chancery cause styled John B. Hallam against Alpha Coal Corporation and others, in which the complainant was appointed special operating receiver for the defendant coal company, and employed contemnor, A. Blake Billingslea, as his attorney.

The ground upon which the charge rested was deliberately misleading the trial chancellor with respect to receivership funds, the material facts being the following:

The receiver, also a contemnor, was allowed two hundred dollars a month salary, and on January 20, 1938, Billingslea was allowed five hundred dollars on account for services as the attorney for the receiver, and an order was entered directing the receiver to make payment.

The cause was referred to a commissioner in chancery for the purpose of reporting the amounts and priorities of the defendant company's assets and liabilities, and after the incoming of the commissioner's report on the tenth of November, on December 21, 1938, upon motion of the receiver, an order was entered directing Billingslea to pay, on or before December 31st, ten hundred eighty dollars thirty-seven cents to the receiver in settlement of two payments that Vanderbilt Coal Company had made to him for the receiver, one of four hundred twenty-five dollars and the other of six hundred fifty-five dollars thirty-seven cents. On December 31st, Billingslea having failed to appear, the receiver filed a written petition alleging Billingslea's non-compliance with the court's former order and praying that he might be held to answer. A rule in contempt was issued returnable January 18th, and on that day, Billingslea filed his verified answer which the court took time to consider.

The answer admits the receipt by Billingslea of the two payments aggregating ten hundred eighty dollars thirty-seven cents as attorney for the receiver, goes on to allege that Billingslea is entitled to five hundred dollars credit by virtue of the allowance formerly made by the court and, in addition, is entitled to credit for certain minor dis-

bursements made for and on behalf of the receiver, and concludes by the averment that he that day has paid to the receiver the entire sum of ten hundred eighty dollars thirty-seven cents, for which the receiver's receipt is exhibited with his answer. The answer alleges that Billingslea believed in good faith that out of the monies coming into his hands he was entitled to be paid the sum disbursed by him on behalf of the receiver, together with the sum allowed him as compensation for his services as attorney for the receiver, and that he had been diligently undertaking to raise the additional money necessary to make the payment of ten hundred eighty dollars thirty-seven cents directed by the court's order entered December 31, 1938, which he had been unable to procure before the day upon which the answer was tendered. The receiver's receipt acknowledges the payment of ten hundred eighty dollars thirty-seven cents as having been that day made by Billingslea. It will be noted that while Billingslea's answer apparently seeks to have credited certain sums disbursed by him for the receiver and allowed by the trial court to him as the receiver's attorney, it also avers that the total sum has been that day paid to the receiver by him and files the receiver's receipt therefor, and it further alleges that due to the lack of funds Billingslea has been unable theretofore to comply with the court's order of December 31, 1938.

The trial chancellor, on the return day of the rule and after Billingslea's answer had been filed, examined both Hallam and Billingslea, and they both admitted that the answer was incorrect because it had been drafted in anticipation of a substantial payment that the receiver had never gotten. Thereupon, they were both sentenced to the Marion County jail to serve ten days, and Billingslea to serve until a three hundred fifty dollar payment had been made to the receiver in compliance with the allegations of his answer, and, in addition, the order provided that both of them forfeit all allowances, fees, expenses and commissions theretofore or which could or might thereafter be allowed for services or expenses as receiver and

attorney. Both contemnors were sentenced for falsifying in response to the court's inquiry concerning payment by Billingslea to Hallam. This appeal was granted upon their petition.

The questions of law which arise upon this record are the following:

(1) Did the circumstances justify the summary contempt proceeding, or do they require an indictment and trial by jury?

(2) Did the trial chancellor have power to order the forfeiture of allowances, fees, expenses and commissions, the total amount of which was not ascertained, and the finality of the court's order making allowances to each of a material sum of them having already been fixed?

(3) Does a contempt proceeding properly lie upon the chancery side of a circuit court?

Code, 61-5-26, grants courts jurisdiction to punish summarily for contempt in certain named instances, and forbids it in all instances not falling within the express enumeration. Subsection (c) refers to, as omitted from the inhibitions, contempt proceedings for misbehavior of an officer of the court in his official character.

Attorneys at law and counsellors are all to be classified as officers of the courts in which they are entitled to practice law, their primary duty being to render sound assistance in arriving at just determinations. Service to their clients is to be subordinated and subjected to a proper course of conduct in the performance and full realization of their primary and indispensable duty. *Langen* v. *Borkowski,* 188 Wis. 277, 206 N. W. 181, 43 A. L. R. 622, 636. While this is a theory often lost sight of, it should be very evident that the attorney for a special receiver who, as the representative of the court, has the custody and control of property *in custodia legis* is without doubt an officer of the court which has assumed jurisdiction over that property. *Kneisel* v. *Ursus Motor Co.,* 238 Ill. App. 50. We therefore conclude that this proceeding, being based upon the misbehavior of a receiver and his attorney, was properly summarily dealt with.

The forfeiture of allowances, commissions, expenses and fees in an unascertained amount, including allowances awarded by decrees that had then become final, we believe to have been clearly erroneous. Fines and jail sentences both can be imposed for contempt. It is, however, like every other punishment which may be imposed upon an individual: the maximum must be clearly defined and the person involved fully informed. Excessive fines being prohibited (Const., Art. III, Sec. 5), it follows that a fine, including a fine for contempt, must be for a definite amount. Otherwise, there is no way to prevent the imposition of excessive fines. We therefore believe that the part of the trial chancellor's order declaring a forfeiture exceeded his jurisdiction, and while not affecting the sentence of imprisonment, the order to that extent was and is a nullity.

Another question that arises upon this record, but due to the manner in which the questions are decided now becomes immaterial in the case at bar, is the validity of the order of the trial chancellor in failing to direct that the allowances of which the contemnors are deprived be paid to the State. It will be seen that the effect of the order is to cause the offense against the dignity of the court to redound to the benefit of the creditors of the insolvent corporation. It is apparent that such a principle would without doubt lead to questionable incentives and that fact may have been one of the reasons which gave rise to our constitutional provision that all fines accruing to the State shall be appropriated for the support of free schools. Constitution, Article XII, Section 5. This Court has taken the position that this provision applies to all fines. *State* v. *Parkins,* 63 W. Va. 385, 61 S. E. 337. In this respect the order of the chancellor was erroneous.

This Court's position has varied as to whether there could or could not be upon the chancery side of our courts a summary contempt proceeding, the former rule being that punishment for contempt is necessarily a proceeding upon the law side of the court. We shall briefly review our statutes and a few of this Court's holdings for the pur-

pose of attempting to clarify what seems to be an existing confusion.

Our present statute, Code, 61-5-26, embraces the subject matter of Sections 27, 28 and 29 of Chapter 147 of the 1923 Code. Section 27 of that chapter is the section which, by its language, conferred upon the courts jurisdiction to punish summarily the listed instances of contempt, including misbehavior of an officer of the court in his official character, and expressly excludes proceeding summarily in all other cases. This section was reenacted from the Code of 1860.

In the case of *State* v. *McClaugherty,* 33 W. Va. 250, 10 S. E. 407, this section was held constitutional as a regulatory statute, but its effect confined to inferior courts. The opinion in that case draws a clear distinction between direct and constructive contempt, classifying the former as being conduct in the presence of the court or such as to obstruct and interrupt its proceedings. In the case at bar, mishandling of receivership funds is clearly conduct which obstructs the receivership proceeding.

Prior to the decision of the McClaugherty case, Judge Green had dealt with the same statute in the opinion which he wrote for this Court in the case of *State ex rel. Mason* v. *Harpers Ferry Bridge Company,* 16 W. Va. 864, 876, and, without drawing a distinction between legislative (those created by the Legislature) and constitutional (those created by the Constitution) courts, had questioned whether the effect of this statute limited the court's right to proceed summarily to punish for contempt, that power being one inherently vested in all (constitutional) courts.

In the case of *State ex rel.* v. *Irwin,* 30 W. Va. 404, 4 S. E. 413, this Court very plainly held that while a chancery tribunal could, in a proper case, issue a rule for contempt, that upon the service and return of the rule the proceeding should be placed upon the law docket and entitled State of West Virginia at the relation of the person at whose instance the rule was issued against the person accused of contempt, and that further proceedings should be upon the law side. The *Irwin* case had to do with what

is termed a civil contempt, being one brought to enforce compliance with the court's decrees or orders. It was also constructive, and not a direct contempt which the statute authorized to be summarily punished.

In the case of *State* v. *Fredlock*, 52 W. Va. 232, 43 S. E. 176, 94 Am. St. Rep. 932, an injunction order had been violated and the contemnor had been summarily proceeded against upon the chancery side. In that opinion this Court approved the practice of transferring offenses occurring upon the chancery side to the law side after the issuance and return of the rule. It accounted for the procedure on the law side exclusively only by the fact that our statute (at that time section 4, chapter 160) granted a review in contempt cases by writ of error, and not by appeal. The *Fredlock* case clearly distinguishes contempts enumerated in section 27 from other contempts criminal in their nature and states that those enumerated in the statute do not require an indictment nor trial by jury. (Page 237.)

In the habeas corpus proceeding of *Ex parte Beaver*, 80 W. Va. 34, 91 S. E. 1076, the petitioner had been imprisoned for the failure to comply with a decree requiring the payment of alimony. Holding that the order of commitment was remedial, the contempt proceeding being upon the chancery side, this Court dismissed the habeas corpus proceeding, thereby sustaining chancery jurisdiction to punish for contempt. It will be noted that this was a summary proceeding not authorized by statute, and, in addition, that the contempt proceeding was not transferred to the law docket.

The case of *Smith* v. *Smith*, 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149, established definitely the doctrine that a contempt proceeding may be maintained on the chancery side and it definitely overruled a number of West Virginia cases that might throw doubt upon that holding. The *Smith* case disposes of the contention that because of the fact that a contempt proceeding involves imprisonment, it is necessarily of a criminal nature conferring the right of trial by jury and is cognizable in a court of law only, and goes further and states that while a so-called civil con-

tempt proceeding lies in a chancery court, nevertheless a proceeding for contempt docketed in the wrong forum would perhaps constitute a mere error as to which there is no right to relief or, in other words, non-prejudicial error.

Reverting to section 26 of our present statute, in the light of the holding in the *Smith* case, it is rather difficult to construe that section as vesting our inferior law courts with the right to summarily proceed to punish the enumerated instances of contempt, and as refraining from according the same power to our chancery courts. While this possible statutory distinction has never been drawn or discussed in any of this Court's former opinions, the idea that punishing for contempt necessarily involved a legal proceeding was adhered to until the *Beaver* case was decided. The *Smith* case soon followed and that holding did not regard the method of review as sufficient to fix the nature of the proceeding in the *nisi prius* court nor does that opinion take the position that a summary proceeding is necessarily on the law side.

An examination of our decided cases shows that the common law distinctions for a time were preserved in contempt cases in spite of the enactment of a statute having for its purpose the simplification of contempt proceedings. Ignoring the statutory provisions, these decisions preserve in all instances the common law distinction between a direct contempt which could be summarily punished because committed in the actual presence of the court and a constructive contempt which required a formal procedure leading to conviction, as well as that between a criminal contempt involving punitive sentences and requiring an indictment and jury trial, and a civil contempt in which there was no punishment involved and the sentence of the court was conditionally imposed in order to compel an obedience of its order.

We have already attempted to explain how the decision in the *Smith* case settled a confusion involving the jurisdiction on the chancery side to entertain a civil contempt proceeding. We think without question that the theory of

reasoning adopted by this Court in that case is perfectly sound, and furthermore, that it could have been partly based upon the fact that section 27 was intended by the Legislature to be applicable to both law courts and chancery tribunals. We think, furthermore, that section 27 was intended by the Legislature to grant to the legislative courts a well defined jurisdiction in contempt proceedings and to regulate those proceedings in those courts which derive their power from the constitution, and by so doing to abolish in the cases to which the statute applies the common law distinction between the different sorts of contempt.

The Circuit Court of Marion County being a constitutional court, and being vested by the constitution with certain powers the maintenance of which is impossible without the correlated power to punish for contempt and disobedience, the statute in question is necessarily to be construed as intended by the Legislature to affect circuit courts only as an act to regulate the exercise of a constitutional power. As such, it clearly justifies the summary punishment of the misbehavior of an officer of the court in his official capacity, even though the power to do so in so far as constitutional courts are concerned does not rest upon a legislative grant. The application of section 27 to courts created by the Legislature, we are under the impression, should be considered a grant and restriction of judicial power, and as to courts created by the Constitution a regulatory statute to the end that a uniform procedure in contempt cases may be maintained. We realize, however, that that question is not presently before us. For the foregoing reasons, we are of the opinion that the sentences of Hallam and Billingslea were correctly imposed. The cited cases are overruled so far as they conflict with this opinion.

Contempt should be expeditiously dealt with and, while the interest of litigants should in no way affect it, we do not believe that the determination of that question hinges upon the style of the proceeding nor upon the tribunal in which it is heard. We are of the opinion that an order

imposing punishment for criminal contempt should be entered upon the law docket in order to conform to well established procedural precedents, but that it does not constitute reversible error to enter such an order on the chancery side of the court.

The order of the Circuit Court of Marion County is affirmed to the extent that it imposes imprisonment upon the contemnors and is reversed in so far as it attempts to impose additional punishment, and the proceeding is remanded for the sole purpose of determining that the approved part of the order has been satisfied.

*Affirmed in part; reversed in part; remanded.*