556 S.E.2d 800

**Georgia Lee BOARMAN, Plaintiff Below,**

**Gilbert Wilkes, III, Appellee,**

v.

**Raymond T. BOARMAN, Defendant Below, Appellant.**

No. 28855.

Supreme Court of Appeals
of West Virginia.

Submitted Sept. 5, 2001.

Decided Nov. 21, 2001.

David J. Joel, Esq., Martinsburg, for Georgia Lee Boarman.

Kirk H. Bottner, Esq., Charles Town, for Appellee, Gilbert Wilkes, III.

Robert D. Aitcheson, Esq., Charles Town, for Appellant, Raymond T. Boarman.

McGRAW, Chief Justice.

Raymond T. Boarman appeals a decision of the lower court that required him to pay a judgment to his ex-wife's former counsel or face incarceration for contempt. The court had previously awarded attorney fees to appellee Georgia Lee Boarman, which were reduced to a judgment. She later assigned this judgment to her former attorney, appellee George Wilkes. After unsuccessful efforts to reach an agreement, appellee Wilkes moved the court to hold Mr. Boarman in contempt. The lower court found Mr. Boarman to be in contempt, but then suspended its order to allow this appeal. Because we find that a judgment for attorney fees is assignable, but that relief by way of contempt is not assignable to a private third party, we affirm in part, and reverse in part.

## I.

### BACKGROUND

After several years of marriage and several children, Georgia Lee Boarman filed for divorce from her husband Raymond T. Boarman on January 29, 1990, sparking a long and acrimonious proceeding, the embers of which still smoulder. This instant appeal is the third appeal concerning the Boarmans' divorce.[1] This appeal concerns actions taken by the lower court with regard to an award of attorney fees granted to Mrs. Boarman.

Appellee Gilbert Wilkes, III, is the attorney who represented Mrs. Boarman in the early years of this divorce dispute, and represented her in the first appeal before this Court. By order dated August 5, 1994, the lower court made an award of attorney fees to Mrs. Boarman in the amount of $8,766.60. On August 11, 1994, the court issued an abstract of judgment, which Mrs. Boarman or her counsel recorded the same day. It is

this sum, plus accrued interest, that forms the basis for the instant dispute.

The divorce action outlasted the career of Mr. Wilkes, who retired from the practice of law in 1996, and Mrs. Boarman retained new counsel, Attorney David Joel. After several proceedings, Mr. Joel also moved for an award of attorney fees for the work he had performed on behalf of Mrs. Boarman, but the court denied Mr. Joel's motion. Finally, by court order dated June 24, 1997, the Boarmans' divorce became final.

The 1997 order contained, *inter alia,* a requirement that Mrs. Boarman convey her interest in the marital farm, and a provision concerning attorney fees, which stated: "7. The parties agree that each will pay their own attorney's fees in this matter." The order made no mention of the 1994 award, and subsequent judgment, granted in favor of Mrs. Boarman.

The Boarmans' harmony was short-lived, because on October 7, 1998, counsel for Mrs. Boarman attempted to attach Mr. Boarman's wages from his employer by means of a Suggestee Execution issued by the circuit court. This proved unsuccessful, as Mr. Boarman had retired. Subsequently, Mr. Boarman moved the court to hold Mrs. Boarman in contempt for failing to convey her interest in the family farm.[2]

By August of 1999, neither Mrs. Boarman nor Mr. Wilkes had received any of the $8,766.60 awarded in the 1994 order. Mrs. Boarman had moved to New York and apparently had little ability to pay her former attorney. On August 6, 2000, in an effort to recover the sums owed to him, Mr. Wilkes took an assignment from Mrs. Boarman of the 1994 judgment. Mr. Wilkes attempted to recover the judgment assigned to him by filing a Petition for Rule to Show Cause

---

1. Mr. Boarman had appealed an award of the couple's seven children to Mrs. Boarman in the first case, *Boarman v. Boarman,* 190 W.Va. 533, 438 S.E.2d 876 (1993)(*Boarman I* ). This Court sent the case back to the circuit court for hearings to investigate the serious allegations made by each side, the details of which may be found in *Boarman I.* After additional study, the lower court granted custody of the oldest child to Mr. Boarman and custody of the rest to Mrs. Boarman. In the second appeal, Mr. Boarman chal-

lenged this decision, but this Court affirmed the decision of the trial court. *See Boarman v. Boarman,* 194 W.Va. 118, 459 S.E.2d 395 (1995)(*Boarman II).* The particulars of these prior appeals do not bear on the matter before us today.

2. The record indicates that Mrs. Boarman conveyed her interest in the farm to Mr. Boarman in May of 1999.

against Mr. Boarman, alleging Mr. Boarman was in contempt of the 1994 order awarding attorney fees. After some delay, the court held a hearing on the matter on February 16, 2000.

By order dated May 5, 2000, the court found that the assignment to Mr. Wilkes was valid and that the 1997 final order did not supersede or invalidate the 1994 order that awarded the fees in question. The court went on to conclude that Mr. Boarman would be found in civil contempt unless he promptly paid the 1994 judgment, plus interest, or made other payment arrangements satisfactory to Mr. Wilkes. Mr. Boarman did not pay the sums ordered, nor were the parties able to reach a payment agreement satisfactory to Mr. Wilkes. However, before Mr. Boarman was to be incarcerated, the judge suspended his ruling, allowing Mr. Boarman time to bring this appeal.

## II.

### STANDARD OF REVIEW

When reviewing an appeal of a civil contempt order, we must look at the legal conclusions drawn by the lower court, as well as the court's findings regarding the factual situation giving rise to the allegation of contempt:

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt 1, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). Bearing this standard in mind, we turn to the matter before us.

## III.

### DISCUSSION

#### A. *Validity of the Judgment and Assignment*

Neither party contests the basic presumption that a valid judgment may be assigned to a third person. Our law supports this contention:

An "assignment" of a right is a manifestation of the assignor's intention to transfer such right, by virtue of which transfer the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance. *Restatement (Second) of Contracts* § 317(1) (1979). Unless required by statute or by contract, the assignor of a right may make an assignment by manifestation of intention to transfer, without any particular formality. *Restatement (Second) of Contracts* § 324 comment a (1979). This Court has recognized these concepts: "No formal words are necessary to make an assignment of a chose in action. Anything showing an intent to assign on the one side, and an intent to receive on the other, will operate as an assignment. It [at common law] need not be in writing." Syl. pt. 5, *Bentley v. Standard Fire Insurance Co.,* 40 W.Va. 729, 23 S.E. 584 (1895). An "[a]ssignment of a chose is a sale like a sale of a chattel. There must be an intent to divest the seller of all right and title, and invest it in the assignee." *Id.* 40 W.Va. at 741, 23 S.E. at 587.

*Smith v. Buege,* 182 W.Va. 204, 210–11, 387 S.E.2d 109, 115–16 (1989) (alteration in original).

It is a well established principle that judgments are akin to property, and as such, may be assigned to another party: "An assignment may be made of a judgment, even if the claim which is later reduced to a money judgment was unassignable, because a court judgment is considered property which may be transferred, like other property, even prior to payment of the judgment." 46 Am Jur 2d, Judgements § 477 (footnotes omitted).

Our own case law reflects a recognition that judgments may be assigned: "The assignor of a judgment or decree by the assignment deprives himself of all interest in and control over it, and transfers to the assignee the ownership of the judgment and all remedies thereunder." Syl. pt. 1, *Hines v. Fulton,* 104 W.Va. 561, 140 S.E. 537 (1927).

This Court has also stated, more succinctly: "A chose in action may be validly assigned." Syl. pt. 2, *Hartman v. Corpening*, 116 W.Va. 31, 178 S.E. 430 (1935).[3] Thus it is clear to us that a judgment for attorney fees may be assigned, and that Mrs. Boarman had the ability to make a valid assignment of the judgment for attorney fees from the 1994 order.

However, Mr. Boarman claims that Mrs. Boarman could not have made a valid assignment because she had "traded away" her right to those fees, before she made the assignment of the judgment to Mr. Wilkes in 1999. Specifically, Mr. Boarman argues that the language of the 1997 final order, quoted *supra*, shows that Mrs. Boarman had agreed to pay all her attorney fees, including those fees awarded in the 1994 order. Therefore, his argument goes, Mrs. Boarman had no right left to assign to Mr. Wilkes when she made the assignment in 1999.

The lower court examined this matter, holding a hearing on February 16, 2000. After listening to arguments from both sides, the lower court made a factual determination that the final order of 1997 did not incorporate the judgment of attorney fees granted in 1994. As we noted, we accord great deference to the factual findings of a trial judge, whose "underlying factual findings are reviewed under a clearly erroneous standard" Syl. pt 1, in part, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

The lower court considered that the 1994 order awarding attorney fees had been reduced to a judgment and recorded, and that the 1997 order had been produced after lengthy legal proceedings involving a completely different set of attorneys. We do not feel the lower court was clearly erroneous when it found that the June 24, 1997 final order did not supersede or modify the August 5, 1994 order awarding attorney fees to Mrs. Boarman, and accordingly, we affirm that aspect of the lower court's ruling.

## B. *Contempt*

Mr. Boarman goes on to argue that, even if Mrs. Boarman had the ability to assign a valid judgment stemming from the 1994 order, she still had no ability to convey to Mr. Wilkes any right she might have had to hold Mr. Boarman in contempt for failing to pay. In other words, he argues, a litigant may not assign the right of contempt to a third party. Therefore, Mr. Boarman claims that Mr. Wilkes is in the same position as any ordinary creditor, and any attempt to jail someone for nonpayment of such a debt is a throwback to an earlier age. We agree with Mr. Boarman that West Virginia has abandoned the Dickensian notion of "debtor's prison." As noted by a Virginia court, "imprisonment for debt passed from our statute books with the abolition of the writ of *capias ad satisfaciendum* in 1849." *Kidd v. Virginia Safe Deposit & Trust Corp.*, 113 Va. 612, 615, 75 S.E. 145, 146 (1912).[4]

---

3. The Court has also held that a party to whom accrued alimony is owed may assign that accrued alimony to another:

    When installments of alimony accrue, the power of the court, under Code, 48–2–15, to alter, control or cancel them terminates (no fraud appearing), and "the right thereto of the payee becomes vested." *Biggs v. Biggs*, 117 W.Va. 471, 474, 185 S.E. 857, 858. When this occurs, Code, 38–3–1, imparts to the decree awarding the alimony the effect of a judgment for the installments. *Goff v. Goff*, 60 W.Va. 9, 22, 53 S.E. 769, 9 Ann.Cas. 1083; *Smith v. Smith*, 81 W.Va. 761, 95 S.E. 199, 8 A.L.R. 1149. Such a vested right may be assigned.

    *Harman v. Harman*, 120 W.Va. 199, 200, 196 S.E. 361, 362 (1938).

4. We note that at the time West Virginia was founded, we adopted the common law of England and the law of the State of Virginia, except

for those portions specifically changed by our Legislature or Constitution.

    The common law of England, so far as it is not repugnant to the principles of the constitution of this state, shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia before the twentieth day of June, eighteen hundred and sixty-three, or has been, or shall be, altered by the Legislature of this state.

    W.Va.Code § 2–1–1(1923).

    Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature.

    West Virginia Constitution, Article VIII, Section 13.

Courts in West Virginia have long enjoyed contempt powers. "The right of this court to punish for [contempt] is inherent and essential for its protection and existence." *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 662 n. 1, 276 S.E.2d 812, 814 n. 1 (1981) (alternation in original) (quoting *State ex rel. Mason v. Harper's Ferry Bridge Co.,* 16 W.Va. 864, 888 (1879)). There are two basic types of contempt, civil and criminal. We have attempted to differentiate the two:

> Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate.

Syl. pt. 1, *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981).[5] This is a domestic case, and our code has special requirements for domestic cases. "A circuit court's authority to enter a contempt ruling in a domestic matter is governed by the provisions of West Virginia Code § 48–2–22 (1999)." *Czaja v. Czaja,* 208 W.Va. 62, 73, 537 S.E.2d 908, 919 (2000). That code section provides, in pertinent part:

> (a) Upon a verified petition for contempt, notice of hearing and hearing, if the petition alleges criminal contempt or the court informs the parties that the matter will be treated and tried as a criminal contempt, the matter shall be tried before a jury, unless the party charged with contempt shall knowingly and intelligently waive the right to a jury trial with the consent of the court and the other party. If the jury, or the court sitting without a jury, shall find the defendant in contempt for willfully fail-

ing to comply with an order of the court made pursuant to the provisions of this article, as charged in the petition, the court may find the person to be in criminal contempt and may commit such person to the county jail for a determinate period not to exceed six months.

> (b) If trial is had under the provisions of subsection (a) of this section and the court elects to treat a finding of criminal contempt as a civil contempt, or if the petition alleges civil contempt and the matter is not tried before a jury and the court finds the defendant in contempt for willfully failing to comply with an order of the court made pursuant to the provisions of this article, and if the court further finds the person has the ability to purge himself of contempt, the court shall afford the contemnor a reasonable time and method whereby he may purge himself of contempt. If the contemnor fails or refuses to purge himself of contempt, the court may confine the contemnor to the county jail for an indeterminate period not to exceed six months or until such time as the contemnor has purged himself, whichever shall first occur.

W. Va.Code § 48–2–22 (2000).[6]

With respect to the assignability of the right to seek contempt, first we examine the logical underpinnings of allowing a divorcing party that right in the first place. We note that our law treats an obligation to pay alimony or child support differently than an obligation to pay an ordinary creditor. We have declared "that alimony, support and maintenance are obligations tinged with a public interest," *Bailey v. Bailey,* 127 W.Va. 826, 830, 35 S.E.2d 81, 83 (1945), and that, "[a]n overwhelming weight of authority, however, makes a decree for alimony more than a mere decree for the payment of money."

5. The parties dispute whether this matter was handled by the lower court as a civil or criminal contempt. The court indicated in the hearing transcript that it was treating the matter as a civil contempt, and we are inclined to agree. However, we need not make that determination to reach our conclusion in this case.

6. We note that the Legislature recently recodified the majority of West Virginia domestic relations law, merging former chapters 48A, 48B, and 48C into chapter 48, by Acts 2001, c. 91, effective March 22, 2001, and operative September 1, 2001. We cite to the former section as the activity in this case occurred before the recodification, but the new code section closely mirrors the old one, with minor changes, and may be found at W. Va.Code § 48–1–304 (2001).

*Smith v. Smith,* 81 W.Va. 761, 765, 95 S.E. 199, 201 (1918).

This Court went on to quote authority in the *Smith* case that explained why the law places such importance on the payment of an alimony or support obligation, and why the use of contempt is warranted when a party refuses to pay:

> It has frequently been insisted that a decree for alimony is in fact a debt, and therefore payment should not be enforced by an attachment for contempt where the Constitution prohibits imprisonment for debt. But it is uniformly held, and such is the true doctrine, that the decree for alimony is an order of the court to the husband compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the officers or to an attorney. The imprisonment is not alone to enforce the payment of money, but to punish the disobedience of the party; and the order is not, therefore, a debt, within the meaning of the Constitution.

*Smith v. Smith,* 81 W.Va. 761, 765–66, 95 S.E. 199, 201 (1918) (quoting Nelson, Div. & Sep. § 939). *Accord, Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980); *Simmons v. Simmons,* 175 W.Va. 3, 330 S.E.2d 325 (1985). Though the Court's language was limited by the realities of the time, and today it may well be the wife who is required to pay alimony to the husband or support to the child, the underlying logic of the *Smith* Court remains valid.

Though it is clear a dependent spouse or child may have the benefit of a contempt proceeding in circuit court, it is also important that we understand the mechanics of such a proceeding. The lower court treated this matter as a civil contempt action. We have explained in *Robinson, supra,* that "[t]he purpose of civil contempt is to benefit a private party. The court is, in effect, lending its authority to the private party to vindicate and assure the rights of the party." *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 674, 276 S.E.2d 812, 820 (1981).

■ The basis for allowing a contempt proceeding in these cases is the special position occupied by the dependent spouse or child, and the recognition that it is important to society as a whole that the dependent spouse or child not suffer penury or destitution. However the mechanics of contempt proceedings require the use of the court's authority to vindicate the rights of the party who has been wronged. That power rests with the court, not the aggrieved party.[7]

■ Thus we hold that, although the remedy of contempt is available to a litigant in a divorce action, and although a litigant in a divorce action may assign judgments awarded during the divorce, a litigant may not assign relief by way of contempt to a private third party.[8] While a court may use its contempt powers to the extent allowed by law, a party cannot transfer those powers to a third person. However, third parties still have available to them the full complement of civil actions to recover money owed to them.

Thus, in the instant case, the 1994 judgment remains valid, as does Mrs. Boarman's assignment of it to Mr. Wilkes. However, Mr. Wilkes does not enjoy, by way of assignment, the same remedies that had been open to Mrs. Boarman.

---

7. Other cases illustrate that contempt power rests solely with the state. For example, in a case dealing with criminal contempt, this Court ruled that private counsel for an aggrieved party in a divorce action was not permitted to prosecute a charge of criminal contempt against a spouse who repeatedly violated the court's orders. *Trecost v. Trecost,* 202 W.Va. 129, 502 S.E.2d 445 (1998).

    The decision in *Trecost,* a *per curiam* decision, relied upon the Court's earlier holding in a case involving a labor dispute, which held: "A party's private counsel is prohibited from replacing the prosecuting attorney whose duty it is to prosecute criminal contempt charges stemming from a civil suit; and it makes no difference whether such private lawyer is appointed special prosecutor." Syl. pt. 2, *State ex rel. Koppers Co., Inc. v. International Union of Oil, Chemical and Atomic Workers,* 171 W.Va. 290, 298 S.E.2d 827 (1982).

8. Nothing in this opinion limits in any way the right of the State of West Virginia to proceed against former spouses who owe alimony or child support.

**162**

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Berkeley County is affirmed, in part, and reversed, in part, and is remanded for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.