459 S.E.2d 395

**Georgia Lee BOARMAN, Plaintiff Below, Appellee,**

v.

**Raymond T. BOARMAN, Defendant Below, Appellant.**

**No. 21814.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided June 15, 1995.

Gilbert Wilkes, III, Martinsburg, for appellee.

Steven M. Askin, Martinsburg, for appellant.

Thomas M. Woodward, Deputy Atty. Gen., Charleston, for West Virginia Dept. of Health and Human Resources.

PER CURIAM:

We again review this child custody matter following our remand in *Boarman v. Boarman*, 190 W.Va. 533, 438 S.E.2d 876 (1993), for further investigation into the allegations of child abuse and neglect. Raymond T. Boarman, the defendant below and appellant herein, appeals the order of the Circuit Court of Berkeley County, which found that custody of his six children should remain with their mother, Georgia Lee Boarman, the plaintiff below and appellee herein. Under the terms of the order, Mr. Boarman would retain custody of the couple's oldest son. On appeal, Mr. Boarman contends the two guardians ad litem for the children were not impartial and favored the mother's side of the case. He criticizes their recommendations and asserts the circuit court's findings of fact and conclusions of law improperly focused on the present conduct of Mrs. Boarman. After reviewing the record, we find the circuit court's order was substantially supported by the evidence.[1] Accordingly, we affirm the judgment of the circuit court.

## I.

After the parties' divorce, Mrs. Boarman received custody of their seven children because she was the primary caretaker. She and the children left West Virginia and moved to New York. The couple's oldest son, Raymond T. Boarman III, later moved back to his father's farm in Berkeley County and continues to reside there. Mr. Boarman appealed the October, 1992, order of the circuit court which granted custody of the children to Mrs. Boarman. On appeal, this Court directed the West Virginia Department of Health and Human Resources (Department) to intervene in the case because allegations of child abuse and neglect, made by each party, were not resolved below. Among other things, it was alleged that Mrs. Boarman was verbally abusive to the children, became intoxicated while watching the children, failed to clean the home and prepare meals, and had sexual relations with a man in front of the children. Mr. Boarman was alleged to have shot and killed the children's cat at a picnic, physically abused the male children, and conveyed extreme racist political views to the children.

We agreed with the Department's recommendations

"that this case be remanded to the family law master for further proceedings, that the Department continue to remain a party to the action, that the children be appointed a guardian ad litem, that a psychological evaluation be performed on both parents and the children, and that the lower court make a finding as to each significant allegation that would impact the welfare of the children." *Boarman v. Boarman*, 190 W.Va. at 536, 438 S.E.2d at 879.

Cynthia Steiner was appointed guardian ad litem for the couple's oldest child, Raymond T. Boarman III (born December, 1978). F.

---

1. This Court had to make arrangements with the circuit court in order to obtain the record below because it was not provided by the defendant's counsel. In note 4, in part, of *State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994), we stated:

"It is counsel's obligation to present this Court with specific references to the designated record that is relied upon by the parties. The failure of counsel to file the appropriate parts of the record below makes it difficult for this Court to read the parties' briefs and understand their arguments. In this context, counsel must observe the admonition of the Fourth Circuit that ' "[j]udges are not like pigs, hunting for truffles buried in briefs" [or somewhere in the lower court's files].... We would in general admonish all counsel that they, as officers of this Court, have a duty to uphold faithfully the rules of this Court.' *Teague v. Bakker*, 35 F.3d 978, 985 n. 5 (4th Cir.1994), [*cert. denied*, ── U.S. ──, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995),] *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991). We serve notice on counsel that in future appeals, we will take as nonexisting all facts that do not appear in the designated record and will ignore those issues where the missing record is needed to give factual support to the claim."

Samuel Byrer was appointed guardian ad litem for the other six children, namely Brix Boarman (born October, 1980), Betty Boarman (born November, 1981), Reinhold Boarman (born November, 1982), Reich Boarman (born November, 1983), Misty Boarman (born November, 1986), and Charles Boarman (born November, 1989). In July, 1994, the guardians ad litem filed separate proposed findings of fact and conclusions of law with the circuit court. Hearings were conducted on June 17, 1994, and July 14, 1994, before the circuit court. The final hearing was held on July 29, 1994.

After reviewing the evidence, the circuit court set forth specific findings of fact and conclusions of law in its order dated August 5, 1994. The circuit court began by describing the conflicts that occurred while the parties were still living together. Clearly, their union was not harmonious. Mr. Boarman was described as having very high standards for himself and others. He was proud of his military career and attempted to run his personal affairs with military precision. The chaos present in the home due to the seven young children was most disturbing to him. He was very critical of Mrs. Boarman's homemaking skills and the children's behavior. He was physically and verbally abusive to Mrs. Boarman. He disciplined the children very harshly. Furthermore, the circuit court found that both Mr. and Mrs. Boarman excessively drank alcoholic beverages.

Specifically in regards to Mrs. Boarman, the circuit court found that the "weight of the evidence does not support abuse and neglect or unfitness of the Plaintiff [Mrs. Boarman] either prior to the final Family Law Master hearing held in this matter or now." The circuit court found insufficient evidence to support the allegation that Mrs. Boarman did not adequately clothe, feed, and supervise the children. The swearing by Mrs. Boarman was found not to be abusive or extreme. Finally, the circuit court found that, although the children did see their mother under the covers with another man, they did not witness any sexual activity and no deleterious effect was shown.

Specific findings of fact were likewise set forth regarding Mr. Boarman's behavior during the marriage. The circuit court found that he provided a habitable home and the children were provided the necessary food, clothing, and supervision. Mr. Boarman's discipline, more particularly to the male children, was described as "harsh and severe." The circuit court found Mr. Boarman's "violence and expressions of racial, ethnic and gender comments, and the shooting of the animals have had a deleterious effect on Raymond T. Boarman III and the other children, primarily Reich." Nevertheless, the circuit court recognized that Mr. Boarman's behavior had improved considerably since he retired. His stress levels were reduced since he underwent counseling and received medication.

Based on the favorable results of the home studies performed on Mrs. Boarman's home in New York and Mr. Boarman's farm, and the testimony of numerous witnesses, the circuit court made the following conclusion regarding Mrs. Boarman's custody of the children: "The Plaintiff [Mrs. Boarman] was the primary caretaker of the children, and she is not unfit. She has bettered her situation considerably, and the children currently residing with her want to stay with her. Custody of the children should remain with her."

The circuit court concluded that Mr. Boarman should retain custody of the parties' oldest child:

"Raymond T. Boarman III, the oldest of the seven Boarman children, has great antipathy toward his mother, the Plaintiff. He does not want to visit her or even see her again in life. Whether residing with the Defendant is best is questionable, but it is a benefit to the Defendant to have him, and Raymond T. Boarman III says it is what he wants. Given that it is his desire, and that the Defendant has the ability to provide, and absent findings of active abuse and neglect currently, custody of Raymond T. Boarman [III] should remain with the Defendant."

Mr. Boarman appeals the circuit court's decision that the couple's six children should remain with their mother.

## II.

This Court accords deference to the findings of fact made by a circuit court when an action is tried without a jury. On appeal, this Court will not set aside a finding of fact unless we find it to be "clearly erroneous." W.Va.R.Civ.P. 52(a). " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Board of Educ. of County of Mercer v. Wirt*, 192 W.Va. 568, 579 n. 14, 453 S.E.2d 402, 413 n. 14 (1994), *quoting U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 765–66 (1948). Syllabus Point 2 of *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990), states:

> " ' "The finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding." Syl. pt. 7, *Bluefield Supply Company v. Frankels [Frankel's] Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965).' Syl. pt. 1, *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980)." [2]

Applying this standard to the facts of the case, we cannot conclude that the record evidence "plainly and decidedly preponderates" against the circuit court's findings.

Mr. Boarman first contends that the circuit court erred by focusing its attention upon the present conduct of Mrs. Boarman without resolving the past allegations of abuse and neglect. The circuit court's order properly addressed the present status of the parents and the children as ordered by this Court. However, the decision also reflects the circuit court's analysis of the allegations of abuse while the parties were living together. The circuit court specifically found that Mrs. Boarman's actions, during the period she was living in West Virginia, did not constitute abuse and neglect.

Mr. Boarman does not argue the circuit court's findings of fact were clearly wrong. However, he criticizes the proposed findings of fact and conclusions of law submitted by the guardians ad litem. The circuit court does not adopt or appear to heavily rely upon the particular areas he disputes. Furthermore, the guardians ad litem submitted their recommendations following the hearings held before the circuit court. Nevertheless, because the court below may have been swayed by the recommendations of the guardians ad litem, we will address some of Mr. Boarman's critiques of their findings.

Mr. Boarman contends Ms. Steiner's findings and conclusions were not impartial and clearly favored Mrs. Boarman. For instance, he claims Ms. Steiner found the fact that Mrs. Boarman allowed the children to view pornographic movies "excusable." However, a fair reading of Ms. Steiner's findings on this issue is that she found no evidence the children watched pornographic movies. The only evidence presented was the uncorroborated testimony of Mr. Boarman that he had seen the children "sneak to take a peak" at the movies.

Mr. Boarman attacks Ms. Steiner's findings on the issue of whether the children observed Mrs. Boarman in bed with another man. Mr. Boarman contends Ms. Steiner's finding that the children suffered no deleterious effects defies logic because the children actually observed their mother engaged in sexual activity. However, Ms. Steiner found "no testimony [was] presented that established that any of the children ever saw the Plaintiff engaged in sexual activity with anyone." Furthermore, Mr. Boarman does not point to any evidence to the contrary.

Additionally, Mr. Boarman asserts his political and racial views are protected by the First Amendment to the United States Constitution and should not be condemned by Ms. Steiner. However, Ms. Steiner's findings make little reference to Mr. Boarman's political views: "I would find that the racial, ethnic and gender slurs have had a deleteri-

---

**2.** The language in Syllabus Point 2 of *Shrewsbury* stating "unless the evidence plainly and decidedly preponderates against such finding" is merely another expression of the "clearly erroneous" standard. Both of these expressions mean that on appeal the factual findings of a trial court will not be disturbed where there is substantial evidence to support the findings.

ous effect on at least one child." In fact, Ms. Steiner did not fully develop this area even though there is evidence that Mr. Boarman expressed extreme views to his children, in part, praising Adolph Hitler.

We do not find that Ms. Steiner's report, when viewed in its entirety, was unfairly critical of Mr. Boarman or showed prejudice to him. She specifically noted that Mr. Boarman made improvement in his behavior: "[H]e does not consume as much alcohol as he used to, nor does he use corporal punishment as often and as severe as he once did. The Defendant [Mr. Boarman] is also available at home on a full time basis as he is now retired so he can spend more time with the children and be more involved in their lives." She also recommended that he retain custody of Raymond T. Boarman III.

■ Mr. Boarman is also critical of Mr. Byrer's proposed findings of fact and conclusions of law. He contends Mr. Byrer made a predetermination that the children should remain with Mrs. Boarman and was biased in presenting the facts. Mr. Boarman first contends that Mr. Byrer's reference to psychologist Hal Slaughter's findings following his evaluation of Mr. Boarman is irrelevant to the custody issue. However, he does not state that he was in any way prejudiced by the findings or that the proposed findings were incorrect. He also states that Mr. Byrer made the erroneous conclusion that the notes taken by Dr. Bradley Soule, a psychiatrist, contradicted Dr. Soule's conclusion that Mr. Boarman could care for his children. However, the excerpts taken from Dr. Soule's notes would raise concerns of Mr.

Boarman's ability to care for his children. Many references are made to the notes in Mr. Byrer's findings, such as Mr. Boarman's chronic and severe problems with anxiety, panic attacks, and depression. Nevertheless, the circuit court did not address these findings, but specifically noted the improvement Mr. Boarman had made.

Mr. Boarman objects to Mr. Byrer's reliance on the report of the evaluation of Brix Boarman, performed by Gerald F. Kane, a psychologist. Mr. Boarman contends that Mr. Kane's conclusions should be discounted because Brix had spent little to no time with his father for over two years and was confused about the events. However, this Court ordered that psychiatric evaluations be made on all the children and the results of the reports were properly discussed by the guardians ad litem.[3]

■ In conclusion, after reviewing Mr. Byrer's proposed findings of fact and conclusions of law, we are of the opinion that he spent considerable time and effort in preparing his recommendations, and we do not find that he was unfair to Mr. Boarman. Both Mr. Byrer's and Ms. Steiner's recommendations appear to have been reached after a thorough investigation into the matter and their clients' (the children's) wishes. The guardians ad litem must advocate for the best interests of the children. In *Matter of Scottie D.*, 185 W.Va. 191, 198, 406 S.E.2d 214, 221 (1991), we stated that a guardian ad litem must zealously represent the interests of his client and that "[s]ecuring the infant's rights includes taking an assertive role[.]" [4]

---

3. In Mr. Kane's report, Brix is described as an intelligent child, possessing a full scale I.Q. score of 119, which means he is in the 90th percentile for children his age. During the interview, Brix stated that Mr. Boarman would not allow the children to watch television shows depicting African Americans unless they were being killed or hurt. Brix discussed incidents where he was physically abused by his father. Brix also told Mr. Kane that his father wanted to kill his brother Charles because Charles did not look like the rest of the family. There is other evidence that Mr. Boarman contests the paternity of Charles.

4. Syllabus Point 5 of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), states, in part:
   "Each child in an abuse and neglect case is entitled to effective representation of counsel.

To further that goal, W.Va.Code, 49–6–2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client."

Notwithstanding our review of the proposals of the guardians ad litem, it must be recognized that this Court's appellate function is to review the findings of fact and conclusions of law made by the circuit court. In addition to reviewing the recommendations of the guardians ad litem, the circuit court conducted extensive hearings on this matter. Based on the evidence before us, we do not find that the circuit court's findings are clearly erroneous.

### III.

For the foregoing reasons, the order the Circuit Court of Berkeley County is hereby affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.