481 S.E.2d 793

**Teresa Lynn Dodd HALLER (Now Hale), Plaintiff Below, Appellee,**

v.

**Kurt Mathew HALLER, Defendant Below, Appellant.**

**No. 23472.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Dec. 19, 1996.

**490**

David L. Parmer, Hinton, for Plaintiff Below, Appellee.

Winifred L. Bucy, Beckley, for Defendant Below, Appellant.

PER CURIAM:

Appellant Kurt Mathew Haller seeks a reversal of an order entered by the Circuit Court of Summers County on November 16, 1995, which modified a prior custody order by terminating Appellant's visitation rights and continuing custody of the parties' minor children with Appellee Theresa Dodd Hale. Arguing that the circuit court failed to give full faith and credit to a Louisiana decree that modified the West Virginia custody decree and that his visitation rights were wrongly terminated, Appellant seeks a reversal of the circuit court's ruling. Upon consideration of the issues raised in conjunction with the record in this case, we [1] find that the West Virginia court did have jurisdiction and remand this case for further development regarding whether a guardian ad litem should be appointed; whether an independent investigation of child abuse charges should be ordered; whether family counseling should be ordered; and whether supervised visitation should be ordered.

### I.

### FACTS AND PROCEDURAL BACKGROUND

The parties were married on October 20, 1984. At the time they entered into a separation agreement on August 11, 1990, both of the parties were enlisted in the Air Force. The terms of the separation agreement provided for Appellee to have custody of the parties' daughters, Elizabeth, born January 6, 1986, and Kala, born August 26, 1988. The agreement further provided that the parties were to "use their utmost effort to insure" that Appellant would have "as much visitation with the children born of the marriage as possible."

In November 1990, Appellee brought criminal charges through the military court martial system, alleging that Appellant had engaged in sexual misconduct with Elizabeth.[2] Before the court martial proceeding was completed, the parties were divorced by order of the Circuit Court of Summers County, entered on December 3, 1990. At the time the divorce was granted, both of the parties

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

2. The incident alleged to have prompted the filing of the charges was Elizabeth's complaint to her mother in November 1990 that her bottom hurt. During this time, Appellee was attending college classes, and Appellant picked up the children at day care and took care of them over night. Appellee took Elizabeth to a pediatrician when her child's complaints about spending time with her father became more frequent. The child allegedly informed the pediatrician that Appellant had kissed her and caused her bottom to hurt.

were stationed in Louisiana.[3] Although the criminal allegations were still pending in Louisiana, the order of divorce made no reference to that issue. Appellee was awarded custody of both children and Appellant was awarded reasonable rights of visitation. The court expressly incorporated the separation agreement into the final divorce decree.

Alleging denial of visitation, Appellant initiated a contempt proceeding against Appellee in March of 1991 in Louisiana. Through this same proceeding, Appellant sought to modify the West Virginia divorce decree with regard to child support obligations, custody, and visitation. During the pendency of the Louisiana court proceedings, the court martial proceeding ended on May 30, 1991, with a finding of not guilty regarding the allegations that Appellant had abused his daughter, Elizabeth. By order entered December 22, 1992, the Louisiana trial court modified the West Virginia divorce decree by changing the custody award to joint custody with Appellee declared as the domiciliary parent. The Louisiana court granted Appellant reasonable visitation rights, but required his visitations to be supervised by his mother, brother, sister-in-law, sister, or brother-in-law. The Louisiana order incorporated a "joint custody plan" that specifically provides that Appellant "is not to be left alone with the children at any time." An additional visitation restriction included in the joint custody plan required that Charles Yoder, the maternal grandfather, was limited to supervised visits with the girls and was prohibited from having overnight visitation.[4] Appellant states that the visitation limitations included in the Louisiana order resulted from an agreement between the parties, rather than from a court finding of abuse.[5]

The children had an extended visitation with their father from June 15 to July 15, 1993, at his residence in Michigan.[6] Upon returning home to her mother, Elizabeth allegedly complained again to Appellee that Appellant had hurt her. Appellee responded to her daughter's complaint by filing a sexual abuse report with the Louisiana Child Protective Services, alleging that Appellant had committed sexual abuse against his daughter.[7] In August of 1993, Appellee moved with the girls to West Virginia[8] without providing notice to Appellant.[9]

The West Virginia Department of Health and Human Resources ("DHHR") received a referral in August 1993, indicating that the parties' children were being abused by Charles Yoder.[10] Mary Treece, the DHHR worker who interviewed the children, concluded that Elizabeth had been sexually molested and recommended that Appellant be prohibited from further contact with the chil-

3. Both parties were discharged from the military on February 29, 1992.

4. Charles Yoder testified at the hearing before the family law master that he had been convicted of sexual abuse "of some children."

5. The Louisiana court order that modified the West Virginia divorce decree does not identify any reasons for awarding the custody modification. The order, which is essentially a one-page document, incorporates an attached nine-page "Joint Custody Plan." Whether the custody plan was a document drafted solely by counsel for the parties, or whether the Louisiana trial court was involved in preparing the subject document, is unclear.

6. The Louisiana court order, through the joint custody plan, expressly provided that Appellant could exercise his visitation rights in Michigan or Florida.

7. Appellee testified before the family law master that in response to this complaint, Louisiana Child Protective Services interviewed both of her daughters, her current husband, and herself. While the record is devoid of any additional information regarding this complaint, Appellee's testimony that she moved to West Virginia with her daughters within three weeks after filing the complaint suggests a probable explanation for the absence of any apparent follow-up to the complaint.

8. While Appellee states in a brief that she moved to West Virginia in February 1992 upon being discharged, the record indicates that her move occurred in the summer of 1993.

9. The Louisiana order expressly required, through the Joint Custody Plan, that both parties were required to give each other a minimum of thirty days advance notice regarding any intended relocations.

10. There is a suggestion made that Appellant may have been the party who made the referral.

dren pending completion of sexual offender treatment.[11]

On November 19, 1993, Appellee filed a petition for modification in the Circuit Court of Summers County, alleging that "a repeated incident of sexual conduct occurred with both children" during a visitation with their father in the summer of 1993. Through her petition, Appellee requested that a social service representative be present during any visitation between Appellant and his children pending a determination regarding the allegations of sexual abuse. In response to Appellee's petition, Appellant denied the allegations of misconduct, requested court-ordered psychological evaluations of the parties and the children,[12] and moved to dismiss the petition claiming that West Virginia did not have jurisdiction.

Appellee obtained an ex parte family violence protective order from the Summers County Magistrate in March of 1994 by citing allegations of sexual abuse that occurred in July 1993. Appellee sought the order to prevent Appellant from having visitation with the girls during the summer of 1994.[13] Appellant filed a petition for appeal of the family violence protective order in April 1994, alleging that venue was improper.[14]

The Summers County Circuit Court determined that it had jurisdiction of the issue of petition for modification, by order dated April 11, 1994, and referred the case to a family law master. The order reflects that

Judge Irons had communicated with Judge Burchett, Jr., of Louisiana, and that the Louisiana judge concurred that West Virginia was the proper forum based on the residence of the children and one parent in West Virginia since June 1993; the presence of substantial evidence in West Virginia regarding the matter; and the residence of all the available witnesses in either West Virginia or Michigan. The West Virginia court concluded that it had jurisdiction over the matter pursuant to West Virginia Code § 48–10–3(a)(2)(1996).[15]

Appellant responded to the Appellee's petition for modification by filing a counter-petition on September 9, 1994, in which he sought a change of custody. On October 14, 1994, the family law master, Edwin Wiley, heard evidence regarding the issues raised in the petition and counterpetition. In his recommended decision, the family law master found that West Virginia had jurisdiction to modify and that the Louisiana modification proceeding was not res judicata as to the issues currently before the Summers County Circuit Court. Regarding the charges of child abuse, the family law master determined that "there has been credible expert testimony from two persons practicing in the field[.]" Despite the fact that the expert testimony was "somewhat rebutted by the testimony of the sister of the … [Appellant]," the family law master stated that the expert testimony could not be "arbitrarily rejected" and concluded that child abuse had

---

11. Appellant has refused to participate in a sexual offender treatment program.

12. The circuit court apparently did not order the psychological reports requested by Appellant.

13. Appellant's counsel represented during oral argument that he had not had visitation with his two daughters since the summer of 1993.

14. The West Virginia family law master notes that the record is devoid of any record regarding the disposition of Appellant's petition seeking to set aside the family violence protective order.

15. This provision of the Uniform Child Custody Jurisdiction Act states that:
 (a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
 . . . .

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships[.]
W. Va.Code § 48–10–3(a)(2).
 Some degree of confusion may result from references to two different proceedings in Louisiana. The first Louisiana proceeding altered West Virginia's custody determination and granted joint custody. That custody matter was no longer pending during these proceedings. At the time the circuit judges from West Virginia and Louisiana discussed the issue of which state should assume jurisdiction, a peripheral matter was pending in Louisiana involving the payment of child support.

occurred. The family law master recommended a denial of Appellant's request for custody and denied any visitation to Appellant "[s]ince credible expert evidence exists that one instance of abuse occurred during a period of visitation supervised by members of his [Appellant's] family."

After hearing argument regarding the parties' exceptions to the family law master's report, the circuit court entered its order on November 16, 1995, adopting the findings of the family law master. Indicating that it conferred with the Louisiana court regarding the Louisiana tribunal's decision not to take jurisdiction of this proceeding, the Summers County Circuit Court stated that West Virginia has jurisdiction over this proceeding based on its continuing jurisdiction to modify prior custody decrees. The circuit court expressly recognized that the evidence was controverted regarding the allegations of child abuse, but deferred to the credibility determinations made by the law master. Finding that "there is substantial evidence to support this finding of child abuse;" the circuit court adopted the family law master's recommendation that Appellant be denied any visitation based on the finding of child abuse.

## II.

## DISCUSSION

### A. Standard of Review and Jurisdiction

■ The standard of review applicable to this case was established in syllabus point one of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that were also adopted by a circuit court, a three-pronged

standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretation are subject to a *de novo* review.

■ Appellant attempts to frame this matter as one involving issues of full faith and credit. However, this was not a proceeding initiated in West Virginia to enforce the order entered by the Louisiana court, and principles of full faith and credit are therefore not dispositive regarding the issue of the circuit court's jurisdiction.[16] *See* 28 U.S.C. § 1738A (1995) (applying full faith and credit principles to child custody determinations); *see also Sheila L. v. Ronald P.M.,* 195 W.Va. 210, 465 S.E.2d 210 (1995) (discussing applicability of full faith and credit doctrine). In this case, the circuit court, as discussed above, immediately conferred with the Louisiana court to determine whether the West Virginia proceeding should continue since an issue, pertaining exclusively to child support, was then currently pending in Louisiana. The conference between the West Virginia and Louisiana judges apparently resulted in the following conclusions: (a) since Louisiana was not currently entertaining issues specifically pertaining to the custody dispute, a jurisdictional conflict under the Uniform Child Custody Jurisdiction Act did not exist;[17] and (b) West Virginia was the proper forum for resolution of the modification of custody issues due to the significant contacts of Appellee and the parties' two children with this State.

Thus, the justification for West Virginia's jurisdiction was deemed two-fold. First, the

---

**16.** Appellant's failure to plead the existence of the Louisiana decree in either his response to Appellee's petition to modify or in his counter petition suggests that Appellant did not seek to enforce the Louisiana modification decree in this State.

**17.** As we recently discussed in *Rock v. Rock,* 197 W.Va. 448, 475 S.E.2d 540 (1996), the Uniform Child Custody Jurisdiction Act requires a state to stay its exercise of jurisdiction

if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons. *Id.* at 453, 475 S.E.2d at 545 (quoting West Virginia Code § 48-10-6). Since the proceeding pending in Louisiana apparently pertained to child support and definitely did not involve a custody determination, the provisions quoted above pertaining to simultaneous proceedings do not apply.

circuit court properly assumed jurisdiction pursuant to the UCCJA based on the availability of evidence and witnesses, and a consideration of the best interests of the children involved. *See* W. Va.Code § 48–10–3(a)(2). Second, the circuit court's assumption of jurisdiction is properly premised upon principles of continuing jurisdiction over custody issues, based on its initial ruling of custody in this case. *See* W. Va.Code § 48–2–15(c) (1996). We find no error with regard to the circuit court's determination that West Virginia had jurisdiction over this matter, and note, in any event, that Louisiana essentially declined jurisdiction over the custody matter and deferred to West Virginia.[18]

Neither the family law master's recommended decision nor the circuit court's order adopting the findings of the law master make any reference whatsoever to the modification ruling entered by the Louisiana court.[19] Because we determine that the Summers County Circuit Court did have jurisdiction to modify, the circuit court's failure to specifically reference the Louisiana decree does not warrant a reversal of the ruling issued below.[20]

Upon remand, the circuit court should clarify its ruling regarding custody. The custody order, as currently written, addresses the custody issue only in terms of the denial of Appellant's request for custody. An affirmative statement that custody remains with or is granted to Appellee is conspicuously absent. While this Court can only surmise that the circuit court was operating under the assumption that Appellee would retain custody based upon the original divorce decree, the lack of a specific statement on this crucial matter creates substantial confusion and irresolution. On remand, the circuit court should acknowledge the existence of the Louisiana decree and expressly state that West Virginia has properly assumed jurisdiction to modify that prior joint custody award.

**B. Lack of Guardian Appointment**

▇▇▇ This Court has stated in syllabus point two of *Boarman v. Boarman,* 190 W.Va. 533, 438 S.E.2d 876 (1993) that:

When serious allegations of child abuse or neglect are made in a custody case, the family law master and circuit judge should direct the Department of Health and Human Resources to intervene and conduct

---

**18.** The UCCJA encourages discussion and collaboration between the judges in the courts which could potentially assume jurisdiction over the matter, as evidenced by its provisions regarding inconvenient forums and simultaneous proceedings in other states. West Virginia Code § 48–10–7(d) provides that a court, prior to determining whether to retain jurisdiction, "may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties." West Virginia Code § 48–10–6(c) specifies that if a court discovers, during the pendency of its own proceeding, the antecedent existence of a proceeding concerning custody in another state, "it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections nineteen, twenty, twenty-one and twenty-two [§§ 48–10–19, 48–10–20, 48–10–21 and 48–10–22] of this article."

**19.** While Appellant argues that the circuit court, in its order denying Appellant's objections to the family law master's recommended decision, found that Louisiana did not have jurisdiction to modify the West Virginia decree and therefore refused to recognize the Louisiana decree, the

record does not support this contention. Rather than denying that Louisiana had jurisdiction to modify a West Virginia decree, the circuit court avoided the issue by stating that "[t]he Court feels that jurisdiction in child custody proceedings is continuing, and the Court always has the inherent power to modify prior custody decrees."

**20.** The Louisiana decree was issued in accordance with West Virginia Code § 48–10–14 (1996) and is therefore subject to recognition by this State's courts. West Virginia Code § 48–10–14 provides that "[t]he courts of this State shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of this article. . . ." The Louisiana court complied with the jurisdictional requirements of West Virginia Code § 48–10–14 by virtue of the fact that Louisiana had been the home state of the children for more than six months before that proceeding had been initiated. *See* W. Va.Code § 48–10–3(a)(1) (1996); *see also Sheila L.,* 195 W.Va. at 217–18, 465 S.E.2d at 217–18 (discussing UCCJA provision regarding enforcement of out-of-state decrees).

home studies and the court should make full inquiry into these allegations. Furthermore, where serious allegations of abuse and neglect arise, the protections afforded children under abuse and neglect law should apply.

One of those protections afforded children in abuse and neglect proceedings is the appointment of a guardian ad litem. *See* W. Va. Code § 49–6–2(a) (1996); Syl. Pt. 5, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) (stating trial court rule requiring guardian ad litem participation and adopting Guidelines For Guardians Ad Litem in Abuse and Neglect Cases). We are seriously troubled by the fact that a guardian ad litem was never appointed to represent the interests of the children involved in this case. Since the allegations of sexual abuse were the essence of the custody dispute, this Court's holding in *Boarman* required the appointment of a guardian ad litem and consideration of the need for a referral to the DHHR. *See* 190 W.Va. at 537, 438 S.E.2d at 880–81. The record reveals that Appellant, in his response to Appellee's petition for modification, expressly requested that the circuit court involve the DHHR.[21] Yet, the circuit court refused to act upon both Appellant's request and this Court's mandate in *Boarman* that such procedure be followed. *See id.* Upon remand, the circuit court must address the appointment of a guardian ad litem as well as the possible need for an independent investigation of the sexual abuse charges. This seems especially important where, as here, more than one relative has been accused of sexual abuse, necessitating close examination of the need for additional measures specifically designed to protect the children.

### C. Visitation Rights

Based upon the family law master's conclusion that there was credible evidence of sexual abuse during supervised visitation and that supervised visitation thus could not eliminate the possibility of future acts of abuse, the circuit court agreed with the law master's recommendation that Appellant should be stripped of his visitation rights. Appellant argues that the termination of his visitation rights was the equivalent of a termination of his parental rights.[22] While this Court has upheld the complete termination of parental rights in specified instances, a review of the record presented in this case raises several serious concerns with regard to the circuit court's total denial of visitation. *See, e.g., Jeffrey R.L.*, 190 W.Va. at 35, 435 S.E.2d at 173 (approving termination of parental rights upon clear and convincing proof of abuse combined with finding of no reasonable likelihood of correcting conditions of abuse).

With regard to the circuit court's power to formulate the visitation arrangements for a noncustodial parent, we recently explained as follows in syllabus point two of *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996):

> W. Va.Code 48–2–15 (1993) grants the circuit court in a divorce proceeding plenary power to order and enforce a noncustodial parent's visitation rights with his or her children. W. Va.Code 48–2–15(b)(1)(1993), the subsection specifically dealing with visitation, provides, in pertinent part:
>
> > The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, as may be appropriate under the circumstances. In every action where visitation is awarded, the court shall specify a schedule for visitation by the noncustodial parent. . . .

In syllabus point three of *Carter*, we continued:

> Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children. In deter-

---

21. In his prayer, Appellant asked "that the Department of Health and Human Resources be ordered to further investigate all of the circumstances regarding these allegations[.]"

22. The family law master's recommended order did grant to Appellant the noncustodial rights of notification regarding illnesses, medical emergencies, and grade notification as provided for by West Virginia Code § 48–2–13(h)(1)(A)–(F) (1996).

mining the best interests of the children when there are allegations of sexual or child abuse, the circuit court should weigh the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse if the allegations are false against the risk of harm of unsupervised visitation to the child if the allegations are true.

196 W.Va. at 241, 470 S.E.2d at 195.

 Regarding the gradual elimination of supervised visitation and the implementation of standard visitation, we explained the following in syllabus point four of *Carter*:

If the protection of the children provided by supervised visitation is no longer necessary, either because the allegations that necessitated the supervision are determined to be without *"credible evidence"* (*Mary D. v. Watt*, 190 W.Va. 341, 348, 438 S.E.2d 521, 528 (1992)) or because the noncustodial parent had demonstrated a clear ability to control the propensities which necessitated the supervision, the circuit court should gradually diminish the degree of supervision required with the ultimate goal of providing unsupervised visitation. The best interests of the children should determine the pace of any visitation modification to assure that the children's emotional and physical well being is not harmed.

196 W.Va. at 241, 470 S.E.2d at 195. Finally, in syllabus point five, we reiterated our longstanding guiding principle that "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." *Id.* at 241, 470 S.E.2d at 195.

 The denial of visitation in the present case was expressly predicated on the finding of sexual abuse. Appellant contends that the family law master erred in reaching its finding of sexual abuse based, in part, on the law master's admission that the alleged abuse had been "somewhat rebutted by the testimony of the sister of the Defendant [Appellant.]" The law master continued, however, to reason:

If this court must make a mistake in regard to child visitation such an error should be made on the side of seeking safety and security for the infant children. The testimony of the sister is insufficient to allow the Court to ignore such expert testimony and accordingly the charges of child abuse are found to have merit.

The mere fact that the family law master referred to Appellant's sister's testimony as "somewhat rebutt[ing]" the allegations of abuse does not invalidate the law master's ultimate conclusion that abuse had occurred. This reference simply indicates that contradictory evidence was offered. As the family law master states in his recommended decision, the sister's testimony, while contradictory, "[wa]s insufficient to allow the Court to ignore such expert testimony." Like all triers of fact, the family law master had to balance conflicting evidence and make his ruling based on a weighing of the evidence, which necessarily involved credibility determinations.

 As the circuit court properly stated in its order addressing Appellant's objections to the family law master's findings, the reviewing circuit court must review a family law master's findings subject to the following standard: "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." Syl. Pt. 3, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995). The circuit court concluded that the law master's finding of sexual abuse was supported by substantial evidence.

The evidence that the family law master found to be credible on the issue of sexual abuse appears to be that of Dr. William Grant, a forensic psychiatrist, who testified as Appellee's expert witness and Mary Treece, a DHHR protective service worker.[23] Appellant argues that the only relevant sexual abuse testimony is that which pertained to

---

**23.** The family law master, in his recommended decision, refers to "credible expert testimony from two persons practicing in the field." From this reference, we conclude that he was referring to Dr. William Grant and Mary Treece.

the abuse that allegedly occurred in the summer of 1993. Although the testimony of Ms. Treece clearly pertained to the allegations of abuse made subsequent to the summer 1993 visitation, Dr. Grant testified at the hearing before the family law master that he had not examined Elizabeth since the court martial proceeding was undertaken in 1990. Thus, his testimony was clearly related to a period of time prior to the allegations of abuse that prompted this modification proceeding. Although such evidence, in and of itself, obviously could not have been the basis for a finding of a change of circumstance since it related to a period prior to the Louisiana custody order, it could provide a factual backdrop to the more recent allegations that were alleged to constitute a change of circumstances.

Although we give deference to the family law master's finding that there was credible evidence of sexual abuse, we question whether the circuit court was correct in denying any visitation rights to Appellant. We have previously held that supervised visitation can be ordered following a finding of sexual abuse. *Mary D.*, 190 W.Va. at 342, 438 S.E.2d at 522, Syl. Pt. 2, in part. Although the supervised visitation previously arranged in this matter was ultimately unsuccessful, the lower court should proceed with a reexamination of the nature of the supervised visitation and an evaluation of other types of supervised visitation which may potentially prove more appropriate for this unique situation. Perhaps, for instance, Appellee's suggestion of using a social services agent for the purpose of supervision could be considered.

We also explained in *Mary D.* that "[t]he family law master or circuit court may condition such supervised visitation upon the offending parent seeking treatment." *Id.* In this case, the circuit court's determination that supervised visitation was not appropriate was premised upon the occurrence of sexual abuse during a period of supervised visitation. Thus, subsequent to the lower court's reevaluation regarding the appropri-

ateness of supervised visitation and the manner in which it should be exercised, the possibility of conditioning the visitation upon the father's submission to treatment should be explored.

Even if Appellant contends that he should not be required to participate in sexual offender treatment due to his continued assertion of innocence, another alternative that can be considered on remand is family counseling. As we explained in *Mary Ann P. v. William R.P., Jr.*, 197 W.Va. 1, 475 S.E.2d 1 (1996),

> When family problems involving children are of sufficient depth and duration that professional counseling is needed to heal the relationships of the child or children with the parent or parents, or to assist the child or children in dealing with such emotional estrangement, a circuit court may direct participation in such counseling and may in its discretion determine how the cost of such counseling shall be paid.

*Id.* at 8, 475 S.E.2d at 8.

Based on the foregoing, we remand this case to the Circuit Court of Summers County for further development regarding whether a guardian ad litem should be appointed; whether an independent investigation of child abuse charges should be ordered; whether family counseling and/or sexual offender treatment should be ordered; whether supervised visitation should be ordered; and whether any additional measures should be put in place to protect the children from abuse by other potential perpetrators, including their grandfather.

Remanded with directions.

RECHT, J., sitting by temporary assignment.