**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**C.L.,**
**Respondent Below, Petitioner**

**vs.) No. 12-1508** (Hampshire County 11-D-152)

**S.L.,**
**Petitioner Below, Respondent**

**FILED**

**February 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

In this divorce action, petitioner, C.L.,[1] by counsel Erika Klie Kolenich and Joann Rumbach, appeals the November 15, 2012, order of the Circuit Court of Hampshire County. In that order, the circuit court refused C.L.'s petition for appeal of a final order entered by the Family Court of Hampshire County that had granted primary custodial allocation of the couple's four children to their father, S.L. C.L., the mother, asserts a variety of grounds upon which she contends this ruling was in error. Conversely, respondent, S.L., by counsel Cathe L. Moreland, argues that the lower courts correctly granted to him primary custodial allocation of the children.[2]

Based on the parties' briefs, the appendix record designated for our consideration, and the pertinent authorities, we find no error in the circuit court's denial of C.L.'s appeal. Thus, as more fully explained below, we hereby affirm. Furthermore, we find a memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure insofar as the Court finds no new or significant questions of law and no prejudicial error.

The parties were married on November 6, 1998, in Upshur County, West Virginia. They both concede that the marriage has been rocky and they have been violent

---

[1]"We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2]We also acknowledge the participation in this matter of the Guardian *ad Litem* for the four minor children, Julie A. Frazer.

toward each other. The couple has four children.[3] Initially, the couple resided in Upshur County, West Virginia; they subsequently moved to Hampshire County, West Virginia.[4] Throughout the marriage, C.L. did not work outside the home and S.L. was employed full-time, working four long days per week. He typically did not work Friday through Sunday.

In July 2011, S.L. filed a petition for divorce in the Family Court of Hampshire County. The petition averred that on July 11, 2011, C.L. took the parties' four minor children and moved into her parents' home in Upshur County without providing notice of this move to S.L. The petition further alleged that C.L. refused to permit S.L. to have visitation with the children. S.L. sought to have the children returned to Hampshire County and further sought either custody and control of the children or, in the alternative, a joint parenting plan with liberal allocation.

C.L. filed an answer and counterclaim in which she contended that she gave notice to S.L. prior to relocating to Upshur County. However, she admitted that she refused to allow S.L. visitation with the children. In her counterclaim, she alleged that both she and S.L. had been physically abusive to each other. C.L. asserted that she left the marital home to protect the children. She further asserted that the parties' families all live in Upshur County and that S.L. is the only family member residing in Hampshire County. C.L. sought primary custody and control of the children with only supervised visitation for S.L.

By temporary order entered on August 12, 2011, the family court appointed a Guardian *ad Litem* and ordered that the primary residence of the children would be with S.L. in Hampshire County pending a report by the Guardian *ad Litem* and further order of the family court. C.L. was granted custody of the children from 6:00 p.m. Sunday until 6:00 p.m. Wednesday each week.

Following an investigation, the Guardian *ad Litem* submitted her report to the family court. The Guardian related that C.L. and S.L. both characterized their marriage as rocky from the beginning and sometimes included violent altercations. Approximately four years prior to the separation, S.L. and C.L. were both charged with domestic assault and battery. They both pled the charges down to disorderly conduct. Both parents acknowledged that the domestic violence occurred in the presence of the children, but neither parent claimed the other was abusive to the children. They apparently had attempted counseling on several occasions with no success.

---

[3]The children are now ages fifteen, thirteen, eleven, and nine.

[4]It is not clear how long the family has resided in Hampshire County, but it is undisputed that the children have lived their entire lives in Hampshire County.

With respect to the instant matter, the Guardian *ad Litem* reported that three of the children expressed a preference to reside with their mother, while one child stated no preference. All four children strongly desired to remain in Hampshire County to be closer to their father, their schools, and their friends. The Guardian *ad Litem* then made the following recommendation:

> Based upon all of the information provided, it is clear due to [S.L.'s] work schedule, and by virtue of [C.L.] being a stay-at-home mom, that [C.L.] performed the majority of the caretaking functions for the four children, and therefore, primary residence of the children should be placed with [C.L.], if and only if [C.L.] remains in Hampshire County. Your Guardian *ad litem* also recommends that custody be split as close to 50/50, to the extent that it is possible due to [S.L.'s] work schedule.

Additionally, with regard to C.L.'s county of residence, the Guardian *ad Litem* explained that "[a]t the onset of this case, [C.L.] had indicated that she desired to move to Upshur County with the children, so that she would be close to her other family members. Since then, [C.L.] has reconsidered, and now desires to remain in Hampshire County[.]"

By temporary order entered September 8, 2011, the family court adopted the recommendations of the Guardian *ad Litem* and ordered that the children shall reside in Hampshire County and shall attend Hampshire County schools at this time. The family court further ordered that "the Respondent [C.L.] will have temporary primary residency of the minor children and that the parties shall share custodial allocation on a 50/50 basis so long as each remains in Hampshire County, West Virginia." Finally, the family court ordered S.L. to "pay the mortgage and other expenses related to the marital home and the expenses of the minor children."[5]

On January 19, 2012, the family court entered an order ruling that,

---

[5]Thereafter, at a hearing on December 22, 2011, the Guardian *ad Litem* advised the family court of an incident that had occurred a few days earlier while the children were with S.L. The Guardian also observed a bruise on the oldest child's arm that resulted from this incident. Nevertheless, the Guardian has opined that this appeared to be an isolated event that did not rise to the level of requiring a report be made pursuant to Rule 48 of the Rules of Practice and Procedure for Family Court, and W. Va. Code § 49-6A-2 (2006) (Repl. Vol. 2009).

3

barring some unforeseen circumstance[,] the court does not believe that it would be in the minor children's best interest to relocate during the school year. However, at the end of the school year should the two older minor children desire to reside primarily with the Respondent [C.L.], based upon the recommendation of the Guardian Ad Litem the court may reconsider the issue of primary allocation at that time.

Subsequently, on March 13, 2012, the family court entered a Final Order of Divorce. On the issue of custody of the children, the court ruled:

11.    The parties shall have a shared parenting plan wherein the **primary residence** of the **minor children** shall be with [**S.L.**] regardless of the location of [**C.L.**]. The parties shall share the significant life decisions and shall comply with West Virginia Code §48-9-601 . . . .

12.    That [**C.L.**] shall have the right of **custodial allocation** depending on her residence as follows:

    **Plan A**: [**C.L.**] is currently residing in Upshur County, West Virginia and remains such after June 1, 2012, she shall have custodial allocation every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The parties will exchange the minor children at Yocum's Store, Seneca Rocks, West Virginia. The summer school break shall be divided equally between the parties.

    **Plan B**: That on or before June 1, 2012 [**C.L.**] establishes a permanent residence in Hampshire County, West Virginia, she shall have custodial allocation ever other week beginning Sundays at 6:00 p.m.

C.L. filed a "Motion for Reconsideration of Judgement," which the family court denied based upon its finding that C.L. had failed to allege any mistake, inadvertence, surprise, excusable neglect, unavoidable cause, or newly discovered evidence. The family court commented that the allegations included in C.L.'s motion were based upon "the history of the parties and were, or should have been, presented to the Guardian *ad litem* prior to the

final hearing." C.L. then filed a petition for appeal in the Circuit Court of Hampshire County.[6]

The Circuit Court of Hampshire County entered an order on August 2, 2012, denying, in part, and remanding, in part, C.L.'s petition for appeal of the family court's final order. The circuit court concluded that the family court had abused its discretion in failing to apply the principles of W. Va. Code § 48-9-403(d) (2001) (Repl. Vol. 2009) to C.L.'s proposed relocation to Upshur County, as the family court should have done pursuant to W. Va. Code § 48-9-206(a)(7) (2001) (Repl. Vol. 2009).[7]

---

[6]C.L. also filed in the Family Court of Hampshire County a motion seeking to find S.L. in contempt and a petition for modification of parental allocation and child support claiming that she had relocated to Buckhannon, West Virginia, and had obtained stable employment. These two motions remain pending in the family court.

[7]In this regard, the circuit court explained that

> 14.    [t]he Court concludes that the Family Court should have considered whether or not [C.L.] exercised a significant majority of custodial responsibility. If so, the Family Court should have next considered whether [C.L.] showed that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose. A review of the file indicates that [C.L.] was a stay-at-home mother and [S.L] often worked long hours, which also required travel. The Guardian Ad Litem's Report indicates that "[C.L.] performed the majority of the caretaking functions for the four children, and therefore, primary residence of the children should be placed with [C.L.], if and only if [C.L.] remains in Hampshire County."

> 15.    Whether or not [C.L.'s] custodial responsibilities constituted a significant majority of 70% or more is a finding the Family Court should have made, and this Court declines to make such a finding. If the Family Court finds that [C.L.] exercised 70% or more of custodial responsibility, then it must consider whether the relocation is in good faith for a legitimate purpose and reasonable in light of the purpose. [C.L.] stated at the February 7, 2012, hearing that her extended family resided in

(continued...)

5

[7](...continued)
Upshur County and she was seeking employment there. Relocating to be close to significant family or to pursue a significant employment opportunity is, by statute, for a legitimate purpose. W. Va. Code § 48-9-206(d)(1). Again, the Court concludes that the Family Court should have made findings with regard to this issue, if it found that [C.L.] exercised 70% or more custodial responsibility.

16.     If neither parent had been exercising a significant majority of custodial responsibility, the Family Court is first obligated to consider whether [C.L.'s] proposed relocation was made in good faith, for a legitimate purpose, and to a location that is reasonable in light of that purpose. However, even if the Family Court finds that the relocation is in good faith, for a legitimate purpose, and to a reasonable location, the Family Court must then consider the best interests of the children. *See* W. Va. Code § 48-9-403(d)(2). Also, if a parent does not establish that the purpose is in good faith for a legitimate purpose and reasonable in light of the purpose, the Family Court must consider the best interests of the children. W. Va. Code § 48-9-403(d)(3). Here, if either of these two situations apply, the Family Court has already found that remaining in Hampshire County is in the children's best interests. Therefore, if either of these two situations apply to this case, this court concludes that the Family Court does not need to modify its parenting plan.

17.     In summary, to be clear, this Court is not disagreeing with the Family Court's findings that remaining in Hampshire County is in the children's best interests. Rather, the Court finds that the Family Court abused its discretion in not applying West Virginia Code 48-9-403(d) to the facts of this case when it knew at the final hearing that [C.L.] was proposing to relocate to Upshur County. *See* W. Va. Code § 48-9-206(a)(7). The Court finds that the Family Court should determine whether or not [C.L.] exercised a significant majority of custodial responsibility. If [C.L.] did exercise a significant

(continued...)

Thereafter, on August 27, 2012, in response to the circuit court's order, the family court issued an addendum to its final order of divorce in which it stated that neither party exercised a significant majority of custodial allocation; therefore, W. Va. Code § 48-9-403(d)(1) did not apply. Accordingly, the family court ordered that "custodial and decision making responsibility shall remain as previously established by the Court's Order entered on the 12th day of March, 2012." C.L. filed a motion for reconsideration, which was denied. She then petitioned the circuit court for appeal of the family court's "Addendum to Final Order of Divorce." The circuit court refused the petition by order entered November 15, 2012, in which it commented that it "and the Family Court ha[d] already considered and reconsidered, respectively, Respondent's grounds for appeal." It is from this order that C.L. now appeals to this Court.

To guide our review, this Court has held that

> "[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

Syl. pt. 1, *Melinda H. v. William R.*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

C.L. contends that, as a stay-at-home mother, she provided a significant majority of the custodial responsibility for the children during the marriage. She argues that the family court erred in failing to grant primary custodial allocation to her pursuant to W. Va. Code § 48-9-206 and W. Va. Code § 48-9-403(d). She argues that her relocation was

---

[7](...continued)
majority of custodial responsibility, then the family court should conduct the analysis contained in West Virginia Code § 48-9-403(d)(1). On the other hand, if the family court finds that [C.L.] did not exercise a significant majority of custodial responsibility or, if she did, that she did not establish that the purpose for her relocation is in good faith for a legitimate purpose to a reasonable location, then this Court concludes that the Family Court has already conducted its "best interests of the children" analysis.

in good faith, for a legitimate purpose, and to a reasonable location in light of the purpose. She had no home in Hampshire County and was unable to find work there. In Upshur County, she can be close to significant family and better able to pursue employment.

In response, S.L. argues that C.L. failed to meet the requirements of W. Va. Code § 48-9-403, particularly in light of the fact that she relocated with the children to Upshur County without notifying him and without his knowledge. He asserts that C.L.'s relocation was not in good faith or for a legitimate purpose, and that she refused to permit contact between the children and their father; therefore, the family court properly applied the best interest standard. Finally, S.L. submits that evidence was presented to show that C.L.'s relationship with a married man, with whom she now resides, was the true reason for her relocation.

The Guardian *ad Litem* states that she agrees with the family court's conclusion that it is in the best interest of the children for them to remain in Hampshire County.

This case has been a very contentious one. The record shows that the parties were argumentative and asserted numerous allegations against each other throughout the proceedings below. The family court had the opportunity to observe the parties first hand and to assess their credibility as to the matters raised. *See, e.g.*, *Haller v. Haller*, 198 W. Va. 487, 496, 481 S.E.2d 793, 802 (1996) ("Like all triers of fact, the family law master had to balance conflicting evidence and make his ruling based on a weighing of the evidence, which necessarily involved credibility determinations."); *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

While evidence was presented to indicate that C.L. exercised a majority of the custodial responsibility for the children prior to the couple's divorce, this fact alone is not dispositive of the question of custodial allocation.[8] Pursuant to W. Va. Code § 48-9-

---

[8]In this regard, the family court specifically held that "neither party exercised a significant majority of custodial allocation and, subsequent to separation, the parties were apportioned an equal percentage of custodial responsibility . . . ." Because neither party exercised a significant majority of custodial responsibility, the family court reallocated "custodial responsibility based upon the best interests of the child[ren], taking into account all relevant factors including the effect of the relocation on the child[ren]" in accordance with W. Va. Code § 48-9-403(d)(2). The family court additionally reasoned

(continued...)

206(a)(7), the family court was required "[t]o apply the principles set forth in [W. Va. Code § 48-9-403(d)]" due to C.L.'s "relocat[ion] or propos[al] to relocate at a distance that will impair the ability of a parent to exercise the amount of custodial responsibility that would otherwise be ordered under this section. . . ." Applying W. Va. Code § 48-9-403(d) necessitated that the family court "modify the parenting plan in accordance with the child[ren's] best interests" and in accordance with certain principles set out therein. One of those principles instructs that

> [i]f a parent does not establish that the purpose for that parent's relocation is in good faith for a legitimate purpose into

---

[8](...continued)

5. [t]hat [C.L.] stated she desired relocation to be closer to her relatives; however, the parties and the children have lived in Hampshire County during the children's lifetimes and there are significant ties in this area; that at the time of the final hearing [C.L.] had no employment prospects which would benefit her greater than those available in the local vicinity.

6. That pursuant to the testimony of the *guardian ad litem* for the children, the children adamantly desired to remain in Hampshire County and primarily reside with [C.L.], although they preferred to stay in Hampshire County with [S.L.] in the event [C.L.] relocated; that the *guardian ad litem's* recommendations reflected the children's desires which she believed were also in their best interests based upon the circumstances of the parties.

7. That the Court cannot find [C.L.'s] desire to relocate is for a legitimate purpose or outweighs the other factors in this case.

8. That even if the Court was to find [C.L.] was relocating for a legitimate purpose, the Court has already found that the best interests of the children are met in remaining in Hampshire County with [S.L.], which decision the Circuit Court upheld in its denial of [C.L.'s] appeal.

These rulings were affirmed by the circuit court in the order herein appealed.

9

a location that is reasonable in light of the purpose, *the court may modify the parenting plan in accordance with the child's best interests and the effects of the relocation on the child. . . .*

W. Va. Code § 48-9-403(d)(3). In applying this statute, the family court, having heard the evidence and observing the parties' demeanor, concluded that C.L.'s relocation was not for a legitimate purpose or to a location that was reasonable in light of the purpose. Additionally, the family court concluded that it was not in the children's best interest to relocate to Upshur County.

> The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

Syl. pt. 2, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011) (quotations and citations omitted). The family court did not erroneously apply the law. Applying the deferential standard for our review of the factual findings of the family court, we similarly find no error. Accordingly, we affirm the order of the Circuit Court of Hampshire County that, in turn, affirmed the rulings of the family court.[9]

Affirmed.

**ISSUED:** February 5, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[9]C.L. raises three additional errors that she concedes were not properly preserved for review. She invites this Court to nevertheless address these asserted errors as important to the public interest. We decline her invitation.

10